Bangor, Oldtown and Milford Railroad Co. *v.* Smith.

---

BANGOR, OLDTOWN and MILFORD RAILROAD · COMPANY
*versus* THOMAS SMITH.

In the absence of proof that a suit brought in the name of a corporation was not authorized by it, its assent will be presumed, although the corporation is but a nominal party.

Where evidence has been offered, that a railroad corporation is building a branch track under the direction of its president, the company, if not otherwise shown, will be held to sanction the acts done and the purpose in view.

When an Act amendatory of the charter of a corporation contains no provision requiring a formal acceptance of it, acceptance may be implied from corporate acts. Grants beneficial to a corporation may be presumed to have been accepted.

A railroad corporation may lay side tracks for its convenience over any land it may own in fee, or land of individuals giving legal consent thereto, if no public interest or private right is affected.

An Act, general in its terms, and applicable to all railroads, is within the meaning of the Statute of 1831, c. 503, empowering the Legislature to modify the charters of corporations; and affects the charter of any railroad company which contains no express limitation to the contrary.

The Statute of 1853, c. 41, prescribing generally how railroad corporations shall proceed in the location of tracks, is applicable to a company incorporated in 1833, although its provisions in that respect are dissimilar to those in the Act of incorporation.

By locating their track across a highway, a railroad company acquires the right to lay their rails and road bed across said highway, in the direction or line of their road; and, it may be, to lay a second track in the same direction and parallel with the first, if the whole line is of that character, and the business of the road requires it; but not to lay a track in a different direction, on an angle or curve, though within the limits of their described location.

Under the statute of 1853, c. 41, § 3, providing that railroads shall not be carried *along* any existing highway, but "*must cross* it in the line of the railway," a corporation cannot extend a curve in a branch track partly over or along a highway, but without crossing it.

On Report of the evidence by Appleton, J.

This was an Action of the Case for obstructing the plaintiffs in the construction of their track at Oldtown.

Writ dated Sept. 13, 1858.

Plaintiffs introduced their Act of incorporation by the name of Bangor and Piscataquis Canal and Rail Road Company, passed Feb. 8, 1833; also an additional Act, extending the rights of said Company for ten years, approved July 31, 1847; also another additional Act, allowing the Company to take the name of Bangor, Oldtown and Milford Rail Road Company, approved March 14, 1855, all which Acts make a part of the case.

Also the records of the Company adopting a branch track at Oldtown, extending from the main track to Veazie's Mills; also the petitions of the Company to the County Commissioners, and their proceedings thereon, for the establishment of the branch track, and for crossing the highway at Oldtown village; also a plan of the proposed extension at Oldtown, filed Sept 15, 1854, in the office of the Clerk of the Courts for Penobscot County; also a deed from Jackson Davis to Samuel Veazie of lots No. 16, 17 and 18, in Oldtown, dated

May 19, 1826, and recorded the next day after its date; all which papers and records are made a part of the case.

The plaintiffs offered to prove that, on the 29th day of July, 1857, while they were at work with about a dozen men, finishing the branch track leading from the main track to the east end of the mills and the track laid down on the plan extending from the railroad bridge, thence by the front of the mills to the branch track at a point near the street where the branch track crosses it, the defendant and several other individuals forcibly opposed the workmen so as to prevent their going on with the work; that the president of the company was present, and requested them, and especially the defendant, to desist and stand away, so as to allow the men to work; that the defendant especially refused, and proceeded to place a bar in front of the workmen, and stand by it with determination to resist, and did resist the workmen, others being present in large numbers to assist in the resistance; that then the defendant seized the tools of the men as they undertook to work, the defendant being the principal or most active man in the opposition; that he seized the person of the president, and so opposed the work that the workmen were entirely prevented from proceeding with their work, and therefore quit; that they did not resume the work on the next day, because they regarded it as useless to attempt it, on account of the defendant's and others' determination to prevent the track being completed, and besides that, time enough did not remain after that day to complete the track before the expiration of said term of ten years, granted in the additional Act of 1847.

The plaintiffs also offered evidence to prove that, at the time and place where the defendant and others resisted them as aforesaid, the workmen were engaged in the work of constructing the track on land of Samuel Veazie, conveyed to him by said Jackson Davis' deed, and that he had been in possession of the land ever since said deed was given; that he assented to the laying out of the road over his land by the company, and to the construction of it; that he was the

president of the company, and owner of the mills, for whose benefit, in part, the track was established; and that the company were proceeding in the construction of the road under his direction; that but a single set of rails had already been laid down along said branch track; and that the track upon which the men were at work when resisted, would, before reaching the line of the street, come within the four rod strip laid down on the plan as taken across the street, thus amounting, as the plaintiffs contended, to only a " double track," " a turn out," " a set of rails," as provided in the charter, and if not so, that the right to cross the road with one or more sets of rails was perfect under the foregoing proceedings. The description of the tracks located, as contained in the County Commissioners' records and company's vote, does not include the track on which the men were at work when resisted; but the track is represented by the line on the plan, and its location, and the work upon it, were authorized and assented to by the owner of the land, Gen. Veazie, who was at the time president of the company.

The plaintiffs claimed as damages, for the illegal acts of defendant, the injury to them by reason of not being allowed to lay a double track as above contemplated, and thus to form a connection of the track in front of the mills with the track back of the mills, so that the cars might be enabled to proceed at once in a direct line towards the main track, instead of the circuitous and dangerous direction otherwise required to run the cars from the mills; the company having by the means been deprived of the power to complete the connection by reason of the acts of the defendant and others, inasmuch as the time allowed by law expired on the next day, under the circumstances aforesaid.

The plaintiffs also claimed damages for being prevented from laying the track up to the line of the road, as contemplated under the consent of the owner of the land; also for interrupting the workmen as they were engaged at the time.

The whole case was taken from the jury, under the agreement that if the plaintiffs were not entitled to recover, on

proof of the facts offered and legally provable as aforesaid, they were to be nonsuit, otherwise the case to stand for trial, and, in the latter case, the Court to decide upon the proper measure of damages to be adopted under the facts offered to be proved.

*A. W. Paine,* for the plaintiffs.

1. The suit is for damages to the corporation by unlawful disturbance of their rights while laying down a railroad track. Had they a right to lay down the track ? They were laying it on land of Veazie, with his assent. It seems to be well settled that a railroad company may build a road over land of individuals with their consent by parol only. The land owner may waive the statute provision for appraisement of damages, and the company may proceed as if the statute had been followed. Redfield on Railways, 105, 106; *Miller* v. *A. & S. R. R.,* 6 Hill, 61; *Embury* v. *Conner,* 3 Com., 516; *Wallis* v. *Harrison,* 4 Mees. & Wels. 538. The land owner could be compelled to execute a license to cover the works erected on the faith of a parol permission. *Hatch* v. *Vermont Central R. R.,* 25 Vt., 72. See, on a kindred subject, *Ricker* v. *Kelley,* 1 Greenl., 117; *Clement* v. *Durgin,* 5 Greenl., 9; *Baker* v. *Brown,* 6 Hill, 47; *Old Col. R. R.* v. *Evans,* 6 Gray, 25.

The defendant had no interest in the land on which the work was going on, and no right to call the plaintiffs' acts in question. Suppose they had been laying a track by consent of the land owner to a gravel bank which they owned, what right has a third party to interfere ? Or, suppose they, by consent, lay down side tracks for their empty cars near a depot, shall a third party tear them up ? Yet all this may be done without a location or even a vote of the company.

2. But the plan introduced shows that there was a location. It has this very track marked upon it, on which they were at work. The action of the County Commissioners is not required where the parties agree. The statute is based on the idea that the consent of the owners waives all objection. It

forbids railroad companies taking land more than four rods in width, "otherwise than by consent of the owners." R. S., 1841, c. 81, § § 2, 3. The charter of this company also provides, "in case the parties shall not otherwise agree," &c., § 4. The consent of Veazie was equivalent to a location.

3. The only other question is that of damages. The plaintiffs are doubtless entitled to damages for the loss of the work of the men when driven off, and to such exemplary damages as the jury may assess. They claim more. It was important to lay this track in front of Veazie's saw mills, thence into the main track, and so on to Bangor. This would pass all the way on Veazie's land, except where it crosses the highway. It would cross the highway on the four rods already taken for the branch road, approved by the County Commissioners. It is thus *quoad hoc* a "double rail," "turn out," or "side track," which the charter authorizes. The charter allowed ten years for completing the works, and the additional Act of July 31, 1847, extended the time to July 31, 1857. The defendants obstructed the work July 29, 1857, and defeated the completion of the track within the limitation. Such is the testimony offered. In consequence, the cars have to go two or three times the distance around a sharp corner. Damages are claimed for this injury, if they had the right thus to cross the road. The right is claimed, because the crossing was to be within the four rods previously taken; the track for which it was taken was single, and this would make it a double one, which the plaintiffs had a right to lay, or it was a "turn out," as provided in § 4, of their charter. A "turn out" was actually laid down on the plan adopted by the Commissioners. This track was not an independent road, but the track and crossing were really one and the same with the one adopted. A formal location was not needed, as the whole road, besides the crossing, lay across land of consenting owners. Redfield, 190, 191; *Little* v. *N. A. & H. R. R.*, 14 Eng. L. and Eq. R., 309; *Ladd* v. *M. W. & B. R. R.*, 2 do., 410.

The charter of the company, § 5, expressly gives power to

construct the road over highways; under this power, the location was sufficient. The charter must control. It is doubtful if this charter is subject to the Act of 1853, respecting the location of railroad tracks. The law of 1831 subjected corporation charters to be altered, amended or repealed. But is a general law an amendment or alteration of a charter? The Act of 1853 is not a "police regulation." The conclusion is that the location is sufficient, if according to the charter.

The plan of extension is referred to as a part of the record of the County Commissioners, and a turn out being laid down on the plan, is adopted as a part of it.

The plaintiffs having been prevented by the defendant from completing their works within the ten years limited, have lost the right to complete them as they proposed to do across the highway. They therefore claim damages for the loss of this right.

*J. A. Peters*, for the defendant.

1. No authority is shown for commencing this action. No record authority is exhibited, nor is it proved that the president was a general manager of the road. Formerly, C. J. MARSHALL held that a corporation could neither talk nor act but in writing. This rule has been relaxed, and perhaps too far. In this State, the president of a bank may sue a note in the name of a bank. 29 Maine, 564. But in 1 Cush., 507, it was decided that the president of a manufacturing corporation could not commence a suit in the name of the corporation.

2. No authority from the corporation is shown for Veazie to build a new track or make an extension. It is not within the ordinary business of the road. The company had acted on extending the road across the highway, but nothing further. It is not shown that Veazie was president. But if he was, it does not authorize him to lay a new track. The record of the track put in, not including *this* track, excludes it. *Expressio unius est exclusio alterius.* If the president can build one mile without authority, or one track, why not 100

miles or 100 tracks? There being no corporate authority to commence the suit, and none shown about the cause of action, the plaintiffs must fail. *Coffin* v. *Collins,* 17 Maine, 440; *M. C. Cor.* v. *Herrick,* 25 Maine, 354; *Rollins* v. *Clay,* 33 Maine, 132. An agent can act for a corporation within the scope of his authority, in the execution of its ordinary business. If building a new track is ordinary, every day business for a railroad company, Veazie may have had authority.

3. There is no evidence that the Act of 1847 was ever accepted by the corporation. The plea of general issue by the defendant admits only the plaintiffs' capacity to sue, and this he could do by the original charter. *O. & L. R. R. Co.,* v. *Veazie,* 39 Maine, 571. The acceptance of the original charter may be presumed from acts under it; but not so with a modification. Redfield on Railways, § 2, p. 10, and cases there cited. If not accepted in the prescribed form, the corporation can derive no advantage from it. *Green* v. *Seymour,* 3 Sand. Ch. R., 285. Chap. 77, § 4, special laws of 1847, prescribes the mode of accepting the Act, which, not being complied with, it does not appear whether the plaintiffs sue as the old or the new corporation. Besides, the new Act was not only auxiliary to the original Act, but fundamental in its modifications. It authorizes an extension of the road in a new direction, across Penobscot river and into several new towns, at great cost; also the building of wharves and piers in tide waters at Bangor, § 2; also the increase of capital stock from $200,000 to $600,000. There can be no presumption of the acceptance of such material changes, without evidence of corporate action in the manner prescribed in the statute. *Bank* v. *Richardson,* 1 Greenl., 80; *Ellis* v. *Marshall,* 2 Mass., 269; *Hunt* v. *S. & C. Railway,* 3 Eng. L. and Eq. R., 144; *Middlesex Turnpike Co.* v. *Locke,* 8 Mass., 268; *Swinsten* v. *Lynch,* 4 Johns. Ch. R., 573; Redfield on Railways, § 10, p. 91, and succeeding pages, and cases cited in the notes.

4. The plaintiffs had no right to build a track where they were at work, because there had been no track located there. They petitioned for a location and crossing, but not this one.

The company's vote, the petition and location by the Commissioners, described a line, but not this line. True, there is on the plan a single line drawn along this track, but that does not constitute a location; if it does, there were fifty other lines on the plan which were each locations of tracks. In the written location, another track is minutely described, but no allusion is made to this line. The suit is for preventing the building of a track located; but no such track was ever located. The statute prescribes the mode of locating and recording tracks; but there is no pretence that it was done in this case.

The plaintiffs say they were on Veazie's land. The answer is, they have no right to build a road on anybody's land, with or without consent, without a prior location. And if they had this right, they had none to run their road across the street, without the consent of the town, which had not been given. They reply, that they would cross within the limits of their former location. But a railroad location across a way gives a mere right of transit, to be regulated by the town or County Commissioners, and not a right to use and occupy the whole width. All the statutes distinguish between the rights of a railroad *off* and *upon* a street. Otherwise the two easements would be wholly inconsistent with each other. The case of *Brainard* v. *Clapp*, 10 Cush., 6, gives a construction to the powers of a railroad not applicable to the crossing of a way. Take the case of one railroad crossing another, and if each is entitled to the width of its location, their rights would conflict. The plaintiffs' construction cannot be maintained, and the use claimed would be indictable as a nuisance. *Commonwealth* v. *N. & L. R. R. Co.*, 2 Gray, 59; *Comm.* v. *Vermont, &c. Corp.*, 4 Gray, 22; 4 Cush., 63; 6 Cush., 424; 19 Eng. L. and Eq. R., 131; Redfield on Railways, 540.

The plaintiffs set up a right to make this a switch or a turn out. But they have no right to make them in a street, and all the foregoing reasoning and authorities are an answer.

*Damages.* The suit is by the company, not by Veazie,

and for preventing a railroad connection. They had no authority to build the road; therefore there can be no damages. The same is true, if they had a right on Veazie's land, for they could not connect across the street. Even if they could connect across the street, there can be no damages for preventing them, for they can as well build now as before the Act of 1847 expired. The street would be their own, and Veazie's land in their control; and if no location was necessary before, none is necessary now. And the damages, if any, are nominal, for the defendant did not cause the injury, but the expiration of their time caused it.

*A. W. Paine,* in reply.

1. As to the authority to sue. The company prosecute the suit in their own name, and there is no evidence that the name is used without authority. The Court will presume it right. But the objection comes too late; it should be in abatement, if at all.

2. As to the authority to build the road. The workmen were laying down the track under the direction of the president. *O. C. R. R.* v. *Evans,* 6 Gray, 38, sanctions it.

3. As to the acceptance of the new Act. The company asked for it, and have acted under it. It was for their interest to accept it, and acceptance will therefore be presumed. Redfield, 10; *C. R. Bridge* v. *Warren Bridge,* 7 Pick., 344; *Bank U. S.* v. *Dandridge,* 12 Wheat., 64. Acceptance may be proved by parol, and is proved by the acts of the company. It is not a case where it must be in a prescribed form. The Act prescribes the mode of calling a meeting, not to accept it, but to choose officers.

4. The plan filed was equivalent to filing a location. But as to consenting parties, no location need be filed.

5. The company have no right to take land under the street, it is argued. The reply is, they take it subject to the public easement, and within the four rods taken may cross the street with two sets of rail, whether parallel or diverging; or with a turn out.

The opinion of the Court was drawn up by

KENT, J. — The first objection made by the defendant is that no authority is shown to commence this suit.

No motion to dismiss has been made, and no call for evidence on this point. If there had been, the offered evidence shows that the action is entirely for an alleged injury to the corporation and its rights; and the case finds that the plaintiffs offered to prove that they were at work finishing a branch track, and " that the company were proceeding in the construction of the road," under direction of its president, when the defendant interposed and obstructed the workmen of the company. In the absence of any proof that the suit was not authorized by the company, the Court must presume that it was properly instituted; and such assent may be presumed where the corporation is a nominal party only. *Lime Rock Bank* v. *Macomber*, 29 Maine, 564.

2. Defendant denies the right of the company to recover in this action, because, as he contends, there was no authority given by the corporation to Gen. Veazie, and the other men engaged with him, to lay the track in question.

The case finds, as above stated, that the plaintiffs offered evidence to prove that the *Corporation* was at work finishing the branch track, and was proceeding in the construction of the road, at the place in question, under the direction of their president. As the case is presented, we are bound to assume that the plaintiffs did or could establish these facts by legal proof, and that the company authorized, recognized or ratified the acts done, and the purpose in view.

3. Defendant objects that the corporation could not lay this track, or cause it to be laid, because, he says that the additional Act of 1847, by which the original Act of incorporation was extended ten years, and a new authority given to extend the railroad and branches in Oldtown, was never accepted by the company.

There is no requirement in this Act of 1847, as contended by the defendant, that the same must necessarily be accepted

by a formal vote of the corporation. The 4th section has reference to a reörganization of the company by the owners of the railroad, if they saw fit. There is nothing in that section from which we can infer that any formal vote of acceptance of the provisions of the other sections was required. The Act in this respect stands upon the same ground as any other amendatory Act. Grants, beneficial to a corporation, may be presumed to have been accepted by them, the same as in case of natural persons. *Charles River Bridge* v. *Warren Bridge,* 7 Pick., 344.

In *Coffin* v. *Collins,* 17 Maine, 442, it is said, in relation to acceptance of a charter, "No formal vote of acceptance is necessary. It may be implied from proof of any regular corporate act." In this case there is evidence that the company, by its directors, did, in September, 1854, vote to make an extension, authorized only by this additional Act of 1847, and did cause the same to be recorded and established. These proceedings clearly show an acceptance of the Act. *Bank U. S.* v. *Dandridge,* 12 Wheat., 64.

The next objection rests upon the position that there was no legal location or laying out of this branch track, over the land where the resistance was made by defendant.

It seems quite clear that this branch or side track was not included in the description in the petition of the company, the survey, or the action by the County Commissioners, as exhibited in the records. There was a mere single line, without any width, marked on the plan filed. But there was no reference to this line in any of the above named papers or records, and no evidence that it was recognized as a laying out. The branch track actually laid out was exactly defined as but one branch or line of railroad, from the extension to the end of the mills. We must therefore conclude that this side track in question was not located by the above proceedings, or by any legal action in pursuance of the provisions of the statute.

But the case finds that the plaintiffs offered to prove that the company had assumed to lay the track, and was actually

laying it, at the time and place of the acts complained of; and also that the place of interference was on land belonging to the president of the road, and that the work was proceeding by his express assent and under his direction. These facts we must assume as established by legal evidence. We have no doubt that a railroad corporation may lay side tracks for the purpose of facilitating its business operations, or to meet its necessities, over any land which it may purchase and own in fee, or over which it may obtain the legal consent of the owner to lay a track, if no public interest or private right is affected. The principal, if not the sole object of the provisions of the statute requiring a formal location and acceptance, and recording of the line of way, is that the rights of individuals in their lands, and the rights of the public in the highways and otherwise, may be protected and secured. At all events, we may safely assert that a private person, who has no right and interest in the land, and who sets up no claim of a right in any form to interfere, cannot, of his own mere will and motion, forcibly interpose to prevent the company from proceeding in their work of laying down a side track over land of their own,. or over which they have the license or consent of the owner to lay their rails. The defendant represents neither the State nor any individual landholder, and is therefore a wrongdoer, and must be held answerable for his illegal acts.

The next question submitted has relation to the rule of damages.

This action is by the corporation for injuries to its corporate rights. Assaults upon individuals, or indignities offered to, or injuries suffered by them personally, cannot be considered in this action. Whatever loss or injury was sustained by the corporation by the wrongful interference and acts of the defendant, and were the natural results of such acts, would properly be regarded as damages to the plaintiffs. This rule would include the necessary loss of time of the workmen, the detention and suspension of the work for the time during which it was necessarily obstructed or suspended, and all

other damages, the manifest result of this illegal interference, and which the jury might, under all the circumstances, deem proper.

But the plaintiffs claim larger damages than the above rule might give to the corporation. It is asserted that the intention was to continue this track from the land of Gen. Veazie until it reached the rails on the track before laid out across the county road, and specified in the records of the County Commissioners, before referred to; and, further, that the corporation had a legal right thus to extend the track, and that the ten years extension, granted in the Act of 1847, expired on the next day after the interference of defendant; and that, by that interference and forcible resistance, the corporation was unable to complete this branch track within the time limited by the Act, and thus suffered great loss and injury, which ought to be paid by the defendant. It is, perhaps, unnecessary to consider what the exact rule of damages would be, provided all the above positions were sustained as facts in the case; because we are of opinion that the corporation had no legal right to lay the track, in the manner proposed, within the limits of the county road or highway. The railroad company had already laid out and established a track *across* the county road according to law, and had built their road thereon, in the direction of " the line of the railway."

The claim now is, to lay this side branch from a point on the railroad, in the highway, not " across" the road, in the "line of the railway," but in a curved line more nearly parallel with the side lines of the road than with the line of the rails across it, and leaving the railroad entirely before it reaches the opposite or easterly side of the highway.

The corporation claims this right mainly on the ground that all of this curved line or turn out, is within the limits of the four rods laid down on the plan and in the record, as the width of the railroad where it crosses the street, and that within that width the company have a right to use the space to lay down a double track, or to make a turn out, as they proposed to do.

Under the original charter of 1833, the company was authorized and required, after having surveyed and adopted a section or division of their line, to deposit a description of the same in the clerk's office, to be recorded, agreeably to section 4. They were, also, by section 5, authorized "to construct and carry their railroad on, over or across any roads, highways or other roads or ways, and construct any bridges or viaducts over or under the same, and to raise or lower any public or private road or highway;" but must leave such road or highway in a safe and passable state; and they must not "construct or carry their road over or across any other road in such a manner as to prevent, interrupt or impede the travel or transportation thereon."

The exercise of these powers seems to have been left to the discretion and judgment of the railroad company, subject only to the interference of the public by indictment for a nuisance, or to private individuals for any injury sustained by the abuse of power, or the neglect of the corporation, until the general law of 1853, which prescribes the mode and manner of crossing public highways.

A material question is, whether, as to this crossing, the corporation is bound by the Act of 1853. It will be observed that all the proceedings in reference to the surveys and adoption of this branch, which crosses the highway at the place in question, were subsequent to the Act of 1853.

The original charter was in 1833, and subsequent, of course, to the general Act of 1831, by which all Acts of incorporation passed since March 17, 1831, are liable to be amended, altered or repealed by the Legislature, as if express provision therefor were made in them, unless they contain an express limitation.

The question does not relate to any thing done by this company, in the matter of crossing highways, prior to 1853.

The Supreme Court in Massachusetts, in a case almost identical in its facts, on this point, with the case at bar, has decided that an Act, general in its terms, and applicable to all railroads in the Commonwealth, and in its terms specifically

applicable to the case in question, is warranted by the general Act giving the Legislature power to modify Acts of incorporation, and that the Legislature may thus modify or alter such charters; particularly where the Act has reference to the remedy, and points out and provides for a more practical way of carrying out the provisions in the charter of the company. *City of Roxbury* v. *Providence Railroad*, 6 Cush., 431.

This seems to be the intent of the statute of this State, of 1853, c. 41; and we have no doubt that this company are bound to comply with its provisions, as to locating and making their road, and as to crossing any street or highway. The plaintiffs seem so to have understood it, and acted in accordance with its provisions in their votes, petitions, surveys and location of the branch track which crosses the road. The regularity of the proceedings of the company, and of the County Commissioners, is not contested; and, by those proceedings, and the record thereof, this branch was duly located across the highway in the general line of the railway, according to the provisions of the law of 1853.

What right did that location give to the company in the highway? The right was that of transit—the right to lay down their rails, and carry their actual road over the highway, without curve or deflection from the line of the railway before it reached the highway—as provided in section 3. The right of the public in the highway is still paramount to that of the company, for all purposes except that of transit. *State* v. *Vermont Central Railway*, 27 Verm., 103; *Commonwealth* v. *Nashua and Lowell Railroad*, 2 Gray, 54; *Ibid.*, 389.

The company does not take the land of the highway as real estate of individuals is taken, nor does it acquire the right to take all materials in or upon the highway to be used for the railroad, as in that case. The railroad company cannot dig up the earth or gravel on the highway, to build or repair their road. No damages can be assessed for the public, for the taking or use of the highway. If the company acquires any right within the limits of the four rods in width in the highway, marked on the plan as in the limits of its lo-

cation, beyond that space actually occupied by the rails and road bed, it is only such as is indispensible or necessary to the full enjoyment of their right to lay the track across the road, and to use it beneficially. They acquire, perhaps, no proper easement in the soil, or, if any thing which can be thus denominated, it is qualified and limited to the special purpose of crossing with their rails, and supporting the necessary and sanctioned road bed. It may not be beyond their right to lay a double track across, in case the whole line is of that character, and required by the necessities or business of the road. But such second rails must, like the first, be laid in one line parallel to the other track, and that line must be in the direction or line of the railway, as before explained.

This brings us to the final and fatal objection, if no other existed, to the proposed curved line of the projected side track on which the work was progressing. The 3d section of the Act of 1853 provides, that "railroads shall not be carried *along*" any existing highway, but "*must cross* the same in the line of the railway"—unless leave be obtained from the town or city through which the same shall pass.

The proposed curved line is, as before stated, not *across* the road at all, but *along* the highway, nearly parallel with the side lines of it. If the company had the right to use the four rods to lay a new track, or side track, in the same manner and to the same extent as on land taken from an individual, the right is clearly and expressly limited to crossing only in the line of the railway; and any direction *along* the highway is distinctly prohibited, without consent. No consent is shown, or contended for. We are therefore satisfied that the company could not legally connect the track it was laying down, on Gen. Veazie's land, with the road already existing, in the manner and in the line proposed.

The result is, according to the agreement of the parties, the case is to stand for trial, upon the principles, as to the measure of damages, before stated.

TENNEY, C. J., and APPLETON, CUTTING, MAY and DAVIS, JJ., concurred.