## BARRE RAILROAD CO. v. MONTPELIER & WELLS RIVER RAILROAD CO. SAME v. GRANITE RAILROAD CO. GRANITE RAILROAD CO. (by cross petition) v. BARRE RAILROAD CO.

*Railroad Company. Effect of Recording Location. Right to Cross other Railroad Track. Sidetracks.*

1. A railroad company, by causing the location of its road to be recorded in the proper office, acquires a prior right to construct its road on the line of such survey, as against another company which, subsequent to such record, but before the condemnation of the land, has purchased it from the owner.

2. A contract to sell the land, over which such location is made, to another company, which is not recorded, and of which the locating company has no notice, does not alter the rights of the parties, although such contract was made before the location was recorded.

3. Where a railroad company, with the consent of the land owners, builds side-tracks to granite yards near its depot for the accommodation and with the concurrence of the owners, such tracks become a part of its railroad, and the company is under the same obligations and acquires the same rights with reference thereto as in case of its main line.

*Held Oct. 23d, 1888.

4. The fact that the company did not obtain the fee to the land crossed, but only the consent of the owners does not vary the case. Such license is good as against a third party, at least until it is revoked.

5. In a proceeding of this kind, one railroad company cannot be permitted to take land lawfully appropriated to the use of another, unless it is *necessary* in the construction of its road. It is not enough that it would be convenient.

The first two of these cases were petitions praying for the appointment of commissioners to determine the points of connection and crossing for the railroads of the several parties. The third case was a cross petition of the Granite Railroad Co. against the Barre Railroad Co., praying for the same relief. The three cases were referred to the same commissioners, and heard together upon the report of such commissioners at a special term of the Supreme Court. The facts appear in the opinion.

*S. C. Shurtleff*, for the petitioner.

Who has the prior right on the Burnham meadow? One railroad company cannot take the land of another without express legislative authority; *Central Vt. R. R. Co.* v. *Woodstock R. R. Co.*, 50 Vt. 452.

Hence the company which took this land first will hold it. The Granite Co. filed a location in the town clerk's office. Before anything farther had been done towards acquiring title, the Barre Co. bought it and took a deed. Is the filing of the location a taking within the meaning of the statute? The language of the statute is, R. L. s. 3355, that such location shall be filed *before* commencing proceedings to acquire title. This therefore is not the taking, but what must be done before the corporation can begin to take. The company does not acquire any right or interest in the land, nor does the land owner acquire any right to claim damages. *Stacy* v. *Vt. Central R. R. Co.*, 27 Vt. 39; *First Nat. Bank* v. *West River R. R. Co.*, 49 Vt. 167.

It is believed that the filing of the location gives no peculiar right to the company filing to build its road on that location, except in those States where upon the filing the land owner

acquires the right to bring suit for his damages. *Charlestown R. R. Co.* v. *Commissioners*, 7 Met. 78 ; *Morris R. R. Co.* v. *Blair*, 9 N. J. Eq. 635 ; *Wadham* v. *Railroad*, 6 Wright, 310 ; *Beal* v. *Penn. R. R. Co.*, 86 Pa. St. 509 ; *Davis* v. *Titusville R. R. Co.*, 30 Am. & Eng. R. Cas. 341.

The Barre Co. claims under and by virtue of a prior contract with the land owner. This contract was not recorded, but the Granite Co. have lost nothing by reason of this fact. It has expended nothing in consequence of ignorance in this respect.

As to the right to cross the side-tracks in the granite yards. The corporation had no authority originally to build these side-tracks, inasmuch as they were built not to a public, but to a private place, and condemn the land for that purpose. *In re Niagara Falls R. R. Co.*, 108 N. Y. 375 ; *H. R. R. R. Co.* v. *Babcock*, 15 N. E. Rep. 678 ; *Getz's Appeal*, 3 Am. & Eng. R. Cas. 186, and notes.

If that company could not in the first place take the land for that purpose by the right of eminent domain, it cannot now prevent another company from taking under such circumstances that it could originally take it from the owner by that right. At all events the Barre Co. has the same right to cross these side-tracks that it would have the main line. *East St. Louis R. R. Co.* v. *R. R. Co.*, 108, 111, 265 ; *Chicago & Alton R. R. Co.* v. *Railroad Co.*, 105, 111, 389. See notes to last case in 14 Am. & Eng. R. Cas. 62.

*B. F. Fifield* and *Geo. W. Wing*, for the defendants.

The right of eminent domain is in the legislature. This right may be delegated, and with respect to crossings has been dele-gated to the Supreme Court. R. L. ss. 3398-3400. In the exercise of this power, the court has equity jurisdiction. Sec. 3403.

The prior right over the Burnham meadow is in the Granite Co. It filed its location before the Barre Co. took a deed of the land, and without any notice of any contract by which it had any right to or in the land. If the right thus acquired can

be defeated by subsequent purchase by another railroad company, then a location is useless. R. L. s. 3355; 46 Vt. 110; Pierce on Railways 157; *Morris & E. R. R. Co.* v. *Blair*, 1 Stock. 635; *Waterbury* v. *Dry Dock Co.*, 54 Barb. 388.

The Granite Co. followed up this location immediately by an assessment of damages, and thus perfected the right which it had acquired by the location. 1 Red. on Rail. 323; 1 *id.* 240; 2 Woods on Rail. 744; 42 Vt. 268; 12 Philadelphia R. 642.

The sidetracks were put in under an arrangement with the land owners. They have been there for years, used by the company as a part of its system. It has acquired the right to have them so considered. *Bangor R. R. Co.* v. *Smith*, 47 Me 46; 3 Kent Com. (8th Ed.) 562-3; 35 Iowa 129; 1 Wood's Rail. 608-9; *McAuley* v. *Western Vt. R. R. Co.* 33 Vt. 311.

There is no public necessity for crossing these sidetracks in this manner, and hence it should not be permitted. It could not be done without an express legislative grant, and here the court takes the place of the legislature. Rorer on Railways 214; Pierce on Railways 155-6; 4 Cush, 71-3; 64 N. Y. 547; 124 Mass. 368; 1 Red. on Railways 265 and note; 6 Vroom 328; 10 *id.* 28; 24 N. J. Eq. 217; 25 *id.* 565; Pittsburgh, J., R. R. Co.'s Appeal, 4 Cent. Rep. 263.

The opinion of the court was delivered by

VEAZEY, J. The decision of the contention between these two railroad companies, viz: the Barre Company, and the Granite Company, as to which is entitled to build a railroad on the line of the recorded surveyed location of the Granite Company on the Burnham meadow, depends upon the construction to be given to those statutes of Vermont which provide for the taking and condemnation of land for railroad purposes. Chapter 157 R. L. provides that a railroad corporation may lay out its road, not exceeding five rods wide, and may purchase or otherwise take lands necessary for making its railroad; that it may cause such examination and surveys for the proposed railroad to be made as are necessary to the selection of the most

advantageous route, and may enter upon lands of a person for such purpose; that before it commences proceedings for the purpose of acquiring title to real estate or an interest therein, it shall cause the location of its road signed by a majority of its directors defining the courses, distances and boundaries of the same in each town through which it passes, to be recorded in the respective town clerk's office of said towns. Then follows section 3359, Revised Laws, which provides that " when a railroad corporation has not acquired by gift or purchase, land, real estate or property, taken or required for the construction of its road, and if the parties do not agree as to the price of such lands and other property," two judges may appoint commissioners to determine the damages, etc. Under the provisions of section 3364, it is upon the payment of the damages or deposit of the same as therein specified, that the company is " deemed to be seized and possessed of the land " appraised by the commissioners.

On the 9th of April, the Granite Company, having previously completed its surveys for its proposed railroad, caused the same to be recorded as provided in the sections of the statutes alluded to, and thereafter proceeded with due diligence to have the damages to the owner of the Burnham meadow, as the same appeared in the land records of Barre, across which the surveyed location extended, appraised by commissioners, and deposited the amount pursuant to the statutes.

On the 10th of April, the next day, the Barre Company took a deed of substantially the same land, from the owner, Mr. Burnham, which the Granite Company had thus located upon.

This deed was taken in fulfillment of a written agreement of Burnham to sell to one Morse in trust for the Granite Company, " any land necessary for the construction " of its proposed railroad; and it was taken before the Granite Company had obtained an appraisal of land damages and deposited the amount thereof. This written agreement to sell was not recorded and the Granite Company had no notice of it before the recording of its survey.

Many other facts appear in the commissioner's report. The foregoing is perhaps sufficient in order to make the claim of the respective companies plain; which is, that each obtained priority of right to the same land for its railroad.

The Barre Company says, first, that its purchase of land was prior to the recording of the Granite Company's survey, and this by virtue of the said contract to sell, and second, that if subsequent, it is sufficient, because it was before the Granite Company had paid or deposited the land damages and so became entitled under the statute to the seizen and possession of the land.

The Granite Company says, that having taken the statutory initial step to obtain seizen and possession, and continued with reasonable diligence, about which no question is made, it could not be ousted by the Barre Company's subsequent purchase, and insists that the purchase must be treated as subsequent.

The question is new in this State. It has been decided in other States, and always, so far as the cases show, which counsel have submitted, or that I have found, in favor of the Granite Company's contention. A late case is *Rochester, H. L. & R. Co.* v. *New York, L. E. & W. R. Co.*, decided by the Court of Appeals of New York in June, 1888, and it was there held that when the initial steps, pointed out by the statute, were taken, there only remained for the company to acquire through purchase, or through proceedings *in invitum*, the right of way over the lands through which the line of route had been surveyed. The initial steps which the New York statute provided, were the making and filing of a map and profile of the route intended to be adopted, and giving certain written notice to all occupants of the land affected.

The court then said: "Clearly, there is involved in these provisions the intention of the legislature that, after the initial proceedings have been taken, which the statute points out as the first action of the new corporation the lands over which the company's route is located shall be subjected to the right of the company thereafter to construct thereon. This right to locate

its line of road, at its election, is delegated to the corporation by the sovereign power ; as is the right subsequently to acquire *in invitum*, the right of way from the land owner. When, therefore, a corporation has made and filed its map and survey of its line of route it intends to adopt for the construction of its road, and has given the required notices to all persons affected by such construction, in our judgment, it has acquired the right to construct and operate a railroad upon such line, exclusive in that respect as to all other railroad corporations, and free from the interference of any party. By its proceedings it has impressed upon the lands a lien *in favor of its right to construct*, which ripens into title through purchase or condemnation proceedings. We could not hold otherwise without introducing confusion in the execution of such corporate projects, and without violating the obvious intention of the legislature."

The decisions in New Jersey and Pennsylvania and other States have been the same. Indeed I have not found, and do not think there is a judicial decision or utterance to the contrary. In Pierce on Railroads, the author says: " The prior right to particular land attaches to the company which first actually surveys and adopts the route, and files its survey according to law," p. 157. See also Wood's Railway Law, vol. 2, sec. 237, p. 744, note 1, and p. 750. The numerous authorities touching this question are there cited by these authors.

But it is said that where this rule has obtained, the land owner can recover his damages as soon as the location is made and recorded, which is not the rule in this State. This is true in some States and may be in all where the courts have held as above shown, but in no instance have I found this fact alluded to as a reason for the ruling. In no case is it held that this initial step constitutes a right to the land as against the owner. In all the States there are further provisions, as in our State, for the appraisal proceedings and completing the establishment of the right to the land. The filing and recording of the survey is nowhere spoken of as other than the initial step to the obtaining of the ultimate right. The right of the railroad

company thereunder is no greater as against the land owner in those States where the land owner may proceed to enforce his claim for damages upon filing and recording the survey than in our State. The reason for the ruling is expressed in the quotation *supra*, from the New York case first cited, viz : the legislative intent. Under its franchise the railroad company may select its location between the terminal points. The location can be determined only upon careful examination and expensive surveys. And then the statute prescribes that this must be recorded in the respective town clerk's offices before the company may commence proceedings for the purpose of acquiring title to the land or an interest therein. Those proceedings necessarily extend over several days. Can it be fairly inferred that the legislature intended by the provision for record that it should have no protective power as against another railroad company stepping in and buying the very land thus selected and thereby thwart the action thus taken and practically get the benefit of the expense incurred ? Such construction could serve no beneficial purpose, but would tend to promote confusion, strife, and the seeking of undue advantage. It is to be kept in mind that the question here is not between the railroad company and land owner, but between the two railroad companies.

In such a controversy it has been repeatedly held, as before stated, that when this initial step has been taken pursuant to the statute, the company first taking it has acquired a vested and exclusive right, not to the land, as against the owner, but to build its railroad on the line which it has adopted, subject to the right of other roads to cross. It is a right which undoubtedly might be lost by neglect to follow up the first steps with proper diligence, but that question is not here.

We therefore hold that the Granite Company obtained the prior right to build on its recorded location, as against a subsequent sale of the same land to the Barre Company.

Was the sale in this case prior or subsequent ?

The deed of conveyance was subsequent, but the contract to sell was prior. At the time the contact was executed, February

22, 1888, the Barre Railroad Company had not been created. This did not occur until April 9, 1888, the same day that the Granite Company filed its surveyed location in the town clerk's office, but it was earlier in the day. But on said 22d of February certain gentlemen were " considering the matter" (quoting from the report) of organization, and the building of a railroad, and on that day W. N. Burnham executed the contract containing this provision: " I hereby agree to sell and convey to A. D. Morse, in trust for said railroad company, any land necessary for its construction, which I own." It contained a further promise to execute a deed when requested, on presentation of a certificate of the stock of the company which he was to take in payment.

The report does not state how much land he owned, or where it was, except the Burnham meadow. It is not stated how large that was, but it appears from the plans in the case to be a meadow of some extent.

As before stated this contract was not put on the public land records, or known to the officers or agents of the Granite Company. The general and comprehensive terms of the agreement will be noted, "any land * * * which I own;" thereby making, if valid, a possible bar to any other railroad company obtaining a right on Burnham's land. Suppose that Mr. Burnham had, notwithstanding his agreement with Mr. Morse, conveyed to the Granite Company the same land that it located upon, then, under the law as to our registry system, it would hold the land as against this agreement. Why should there be any distinction between its right under a location made pursuant to the statute and a purchase? It is argued that if the Granite Company had no notice of the agreement, it was not thereby injured. How can that be said when that company have made these preliminary examinations and surveys upon Mr. Burnham's land, and caused the same to be recorded, and shaped their whole line in that vicinity with reference to crossing his land in the place selected? This was all done, and the expense incurred in reliance upon the records showing the true title. We think that when a railroad

company has completed its preliminary examinations and sur-
veys and selected its location between the terminal points, and is
ready to have the same recorded, as the statute provides, it may
have the record made in the same reliance upon the land records
as to title that would pertain to it or any other person who
should buy the land.

The next question arises under the claim of the Barre Com-
pany to build its road across the side tracks of the Montpelier
and White River Company, in the granite yard, so called. The
findings of the commissioners are conclusive against this claim,
unless that company has the same right to run through the yards
of the stone dealers as it would have if the three spur roads
which the Montpelier & White River Railroad Company have
built from its main line to the derricks and sheds of the several
dealers in granite, were not there.

There are no express provisions in the charter of this com-
pany, or in the general railroad statutes, granting the right to
extend sidetracks from the main line, on to the lands adjoining
the surveyed limits of the road as located, except such right as
impliedly exists under section 3358 Revised Laws.

That section reads : " No land without the limits of its road
shall be taken by a railroad corporation for the requisite and
convenient accommodation of its road, without permission of the
owner thereof, unless the commissioners, on the application of
the corporation, and after twelve days notice to the owner, first
prescribe the limits within which such land shall be taken."

The three sidetracks which the Barre Company desire to
cross, were built several years ago under an arrangement between
the railroad company and the granite dealers that the latter were
to do the filling and grading and the railroad company was to
furnish and lay the ties and iron. This arrangement was not in writ-
ing and the railroad company has no title to the land by deed, or
by the exercise of eminent domain. The title was, and has
remained in the granite dealers, for whose convenience, together
with that of the railroad company, these spurs were built. They
have been used as designed ever since. The yard in which the

granite sheds are located, and on which these sidetracks are built, lies adjoining next west of the railroad and depot at Barre, which was the terminus of the railroad. The report states that these sidetracks were there built as they seemed to be required.

It appears that this railroad as a whole was built with reference in large measure to the granite industry in Barre. It is plain that to meet the demands of that industry extensive yard room at or near the station, and heavy machinery was required. The railroad company could have taken whatever land was necessary for depot accommodations, having reference to the nature of its business as there existing, section 3357. The necessity of extending the railroad grounds and erecting a derrick and other facilities for this business was obviated by the above arrangement with the granite dealers. The question whether a railroad can, under our statutes, and without express grant, build sidetracks or spurs as they please to neighboring manufacturing or mining establishments, is not here involved. This is a case where parties located themselves by the railroad near the depot and obtained the best service of the railroad by having sidetracks run on to their own premises, instead of other land or elsewhere.

In *Bangor, Old Town & Milford R. R. Co. v. Smith*, 47 Maine 46, the court says: "We have no doubt that a railroad corporation may lay sidetracks for the purpose of facilitating its business operations, or to meet its necessities, over any land which it may purchase and own in fee or over which it may obtain the legal consent of the owner to lay a track, if no public interest or private right is affected."

These sidetracks were not mere private ways outside of the principal road. They connected with it and were used as a part of it, and the people who had occasion for the transportation of the granite product and other material to and from these sheds, over those spurs, were interested in them. The public, as the term is used in law in such connections, enjoyed a beneficial use of these roads. It was lately held by this court, in *Brock v. Town of Barnet*, 57 Vt. 172, that a way laid out for one individual's convenience, was yet a public way. So in *Sherman v.*

*Buick,* 32 Cal. 241, it was held that roads leading from the main roads to the farms of individuals, are of public concern. They are open to every one having occasion to use them, and are therefore public. The business of these granite dealers was with the public in a large sense.

We do not put this point upon any general right of the Montpelier & White River Railroad Company to build sidetracks to manufacturing establishments outside its location, across land of parties objecting, whatever that right may be, but upon the ground that this company only obtained, by contract with the adjoining owners, who were its customers, that which was required for the convenient accommodation of the road, as contemplated in section 3358, to the great advantage of all concerned, without infringing any public interest or private right. It was in substance a more convenient equivalent of a necessary enlargement of depot accommodations.

We therefore hold, upon the facts now appearing, that these tracks became a part of the railroad, conferring the same rights upon the company and imposing the same obligations, as the main line.

It is urged that this is not so because the license to the railroad company by the land owners is revocable. Suppose it is, which we do not decide, because the question is not raised by the case, no revocation having been attempted, we still think that is no test of existing right. Suppose the main line had been built across some farm by the license of the owner, which he could revoke but never had revoked, would that piece of the road stand any different as against the claim of another railroad company, from what the other parts of the road would stand? A license, though revocable, is as good as against a third party as though not revocable, until it is revoked. Wood's Railway Law, Vol. 2., s. 211, p. 608, and case cited.

The right of the court to prohibit the Barre Company from crossing these sidetracks is not denied, if they stand the same in legal right as the main line.

The law, as we hold it, and the facts reported, place an absolute bar to the crossing of these sidetracks leading to the granite sheds by the Barre railroad. As to the other crossing by the Barre Company, no question is made but that the company is entitled to cross at the point marked on the map or plans on file.

The remaining question arises on the claim of the Barre Company to take 360 feet in length of the land of the Montpelier & White River Company, for the purposes of its track.

It appears that this would be a convenience to the Barre Company, but it is not necessary to it.

The law is well settled and has been applied in a great variety of cases that land already legally appropriated to a public use, is not to be afterwards taken for a like use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication. *B. & M. R. R.* v. *L. & L. R. R.*, 124 Mass. 368; Pierce on Railroads, p. 155, note 4.

The commissioners have not reported any facts showing a necessity for the Barre Company to lay its track upon the land of the Montpelier & White River Company. The only suggestion in argument is that it would enable the former company to avoid a sharp curve in the event that it is allowed to build its road as it has proposed through the yard of the granite dealers. The proposition of law involved is so well established, and the facts reported fall so far short of the requirements in order to grant the relief sought, that more extended discussion of the point is not warranted.

This disposes of the questions argued.

An order was filed pursuant to the above views covering the points discussed, and others not disputed.