(Decided 9th December, 1880.)

HENRY B. SHAFFER and SAMUEL A. MUNN, trading as SHAFFER & MUNN *vs.* UNION MINING COMPANY OF ALLEGANY COUNTY.

*Construction of the Act of* 1880, *ch.* 273.

The Act of 1880, ch. 273, entitled an Act to prohibit the payment of employés of certain corporations operating in Allegany County, otherwise than in legal tender money of the United States, though

a valid exercise of power by the Legislature, so far as it affects the corporations therein designated, does not conflict with Art. 9 of the Code, relating to the Assignment of Choses in Action. This Act was not intended to restrict, nor does it restrict the powers of the employés of a corporation engaged in mining and manufacturing in Allegany County and employing more than ten hands, so as to prevent their assigning what was due them from the corporation by orders drawn on the corporation in favor of merchants who had sold them goods, said orders specifying that the amounts due the merchants should be deducted from moneys due the employés by the corporation for wages, and be paid to the merchants for their account, and authorizing the merchants to receipt in the employés' names for the amounts so paid, and which orders were accepted by the corporation.

This Act being a penal Statute, and intended to be in the interest of the employé, it is not restrictive of the employé's rights, except in so far as it prevents him or the holder of his assignment of wages from colluding with the employer to do what the law has forbidden any corporation as is therein described from doing.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and IRVING, J.

*Johns McCleave,* for the appellants.

*Ferdinand Williams,* for the appellee.

IRVING, J., delivered the opinion of the Court.

This case comes before us on an agreed statement of facts and a waiver of all errors in pleading. The sole object of the suit, it is said, is to obtain a construction of ch. 273 of the Acts of 1880, and test its constitutionality.

The first section of the Act provides, "that every corporation engaged in mining or manufacturing, or operat-

ing a railroad in Allegany County and employing ten hands or more, shall pay its employés the full amount of their wages in legal tender money of the United States; and that any contract by or on behalf of any such corporation for the payment of the whole or of any part of such wages in any other manner than herein provided, shall be and is hereby declared illegal, null and void; and that every such employé shall be entitled to receive from any such corporation employing him, the whole, or so much of the wages earned by him, as shall not have been actually paid to him in legal tender money of the United States, without set-off or deduction of his demand in respect of any account or claim whatever."

The second section creates an exception from the provisions of the first section, and declares that nothing in the first section shall prevent such corporation from demising the whole, or any part of a tenement to its employés, and deducting from the wages the rent thereof, nor for medicine, medical attendance, nor fuel, nor money advanced to procure these several things.

The third section makes payment, by consent of the employé in the notes of any bank current in the State at the time at par, as good as if made in legal tender money.

The fourth section declares the making of any contract, or any payment "hereby declared illegal" shall be an indictable offence in any Court of competent jurisdiction, and pronounces heavy penalties.

The fifth section makes the Act go into effect from the date of its passage. It was approved April 10th, 1880.

The conceded facts are as follows: the appellants are merchants who rent their place of business from the appellees; but the appellants and appellees beyond this relation of landlord and tenant have no business connection, and neither has any interest in the business of the other. The appellees are a corporation engaged in mining and manufacturing in Allegany County, and employ

more than ten hands. John L. Barrett, being an employé of the appellees on the second day of January, 1878, and for some time previous thereto, and expecting to continue in the employment of the appellees, (which he did until the bringing of this suit,) did on the second day of January, 1878, execute an order on the appellees in favor of the appellants in these words, viz., " Mt. Savage, January 2nd, 1878, I, John L. Barrett, being in the employ of the Union Mining Company, hereby request the said company through its cashier, to deduct from the moneys now due or which may hereafter be due me for wages, the amounts now due, or which may hereafter be due from me to Messrs. Shaffer & Munn, merchants, as per bills rendered and hereafter to be rendered, by said Shaffer & Munn, and to pay over said amounts to said Shaffer & Munn, for my account ; and I hereby authorize said Shaffer & Munn to receipt for me and in my name, for the amounts so paid, which receipts shall be final and absolute. This order to remain in full force and effect until countermanded by me in writing, and delivered to the cashier of said company ; but such countermand shall not affect wages earned by me before the delivery of such countermand, whether such wages are due and payable or not, and such countermand shall not take effect until the claims of Shaffer & Munn are paid in full." This paper was signed and sealed by John L. Barrett in the presence of a witness.

A like order was made and executed on the twelfth day of April, 1880, by James H. Brown, in favor of the appellants, he being admitted to have been, at the time and before, and continuously until suit brought in the employ of the appellees. Both these orders were accepted by the appellees on the day of their respective dates.

It is further admitted that the appellants between the 12th day of April, 1880, and the 1st day of May, of the same year, sold goods, wares and merchandise to the

drawer, John L. Barrett, to the amount of $51.50 on the faith of his order to the appellants on the appellees, and that the appellees when called on for payment, refused payment, because of the provisions of the Act of 1880, chap. 273. It is also admitted that between the first and twelfth day of April, 1880, the appellants sold to James H. Brown, goods and merchandise amounting to $53.00, when the order was accepted, and that afterwards on the faith of the order, they sold other goods to the amount of $52.00. It is also admitted that when demand was made by the appellants, there was enough due each of these assigning employés to pay the appellants' demand. There was a third employé, Wm. M. Johnson, who on the 1st of May, 1880, had due him from the appellees for his wages the sum of sixty dollars, which wages by an assignment in writing in the following words, he passed to the appellants, viz., "To the Union Mining Company of Allegany County, for value received, I hereby assign, set over and transfer to Shaffer & Munn, the amount of wages now due me from you to me, being the sum of sixty dollars for wages for thirty days at two dollars per day, and I do hereby authorize and direct you to pay said sum to Shaffer & Munn, at the next regular pay-day of said Union Mining Company of Allegany County, and I do authorize said Shaffer & Munn to receipt to· you for me for said sum." This was signed but had no seal attached. Payment of this was also demanded and refused. All these employés are citizens of the United States and of the State of Maryland.

It is also admitted that the charter of the appellees, as a corporation, contains a reservation that it may be repealed or amended by the Legislature at its pleasure.

Suit was instituted by the appellants in their own name to recover the amounts due respectively on these several assignments.

The narr. contained a count on each order and assignment, and it was agreed that all defences might be

admitted under the simple plea of *non assumpsit,* which was accordingly interposed.

The main questions for consideration are first, is this Act a valid exercise of power by the Legislature so far as it affects the Union Mining Company. And secondly, if it was constitutional and valid as to the appellees, was it intended to restrict, and does it restrict the powers of the employés of the corporation, so as to prevent their assigning what was due them from the appellees to the appellants; and if it was so intended was it competent for the Legislature to impose such restriction.

1. It being conceded that the Legislature when it incorporated the Union Mining Company, reserved the right to alter or amend its charter at pleasure, there can be no doubt that the Legislature could enact a law prohibiting the corporation from paying its employés otherwise than in money, and that it could forbid the corporation from making contracts with them for payment in anything but money. It was also entirely competent for the Legislature, as one of the means of securing observance of the law, to withdraw from the appellees the right of set-off, (in a suit against them for wages,) for goods sold their employés in contravention of the Act, or for any other claim prohibited by the Act. The acceptance by the corporation of a charter with the reservation of right to alter and amend, made that provision a part of the contract, which, as between the Legislature and it as a private corporation, it must be understood to be. A corporation has no inherent or natural rights like a citizen. It has no rights but those which are expressly conferred upon it, or are necessarily inferrible from the powers actually granted, or such as may be indispensable to the exercise of such as are granted. A private corporation is only a *quasi* individual, the pure creation of the legislative will, with just such powers as are conferred expressly or by necessary implication and none others. Whatever, there-

fore, may have been the mischief intended to be reached and prevented by this law, by restrictions imposed on the corporation, it was competent for the Legislature by this law which operates as an amendment of its charter, to accomplish. *State vs. Northern Central R. R.*, 44 *Md.*, 131.

2. Having determined that the Legislature has the power to control this appellee in respect to its contracts with its employés, and the mode of paying them; the next inquiry is, does this law by necessary implication restrict the powers of the employés over their wages—the fruits of their labor—so that they may not assign their wages, as others may their *choses in action?*

This statute was evidently conceived and enacted for the purpose of correcting some evil which had resulted to the employés of such corporations as are described in the Act, and perchance to the community also, from the mode in which those corporations had been wont to deal with their operatives. The statute was manifestly intended to be in the interest of the employés. We suppose it must have been intended to protect the employé from future exactions, extortion or over-reaching, supposed to have affected them injuriously in the past. Being protective in its character, it cannot have been intended as restrictive of the employé's rights, except in so far as it prevents his colluding with the employer to do what the law forbade the corporation to do. The Legislature is always presumed to have intended a constitutional exercise of power; and laws will be so construed as to make their provisions lawful if possible. *Cooley's Constitutional Limitations*, 221. It cannot be supposed the Legislature intended to impose a restriction upon these employés, which would have been an unconstitutional invasion of their rights. Judge COOLEY on page 492 of his work on *Constitutional Limitations*, says: "If the Legislature should undertake to provide that persons following some specified trade or employ-

ment should not have the capacity to make contracts, or to receive conveyances, or to build houses as others are allowed to erect, or in any other way to make use of their property as was permissible to others, it can scarcely be doubted, that the act would transcend the due bounds of legislation, even though no express constitutional provision could be pointed out with which it would come in conflict. To forbid to an individual, or a class, the right to the acquisition or enjoyment of property, in such manner as should be permitted to the community at large, would be to deprive them of *liberty*, in particulars of primary importance to their pursuit of happiness." This is so because equality of rights and privileges is the aim of the law. Judge SHARSWOOD in his note to *Blackstone*, *vol.* 1, *page* 127, says that *"liberty* is that state in which each individual has the power to pursue his own happiness according to his own views of his interest and the dictates of his conscience, unrestrained except by *equal, just* and impartial laws."

BLACKSTONE lays down as one of the absolute rights of an Englishman, inherent in every citizen, "the free use, enjoyment and disposal of all his acquisitions without any control or diminution, save only by the law of the land." When he speaks of the control which the law may exercise, he means law which operates equally and alike on all. *Sharswood's edition Blackstone, page* 138.

To accord to this law the construction contended for by the appellee, and which was given it by the learned Judge who decided this case below, would be doing unwarranted violence to the rights of the employés over the fruits of their own labor. It would be preventing their use of their wages, which might have been accumulating in the employer's hands, in the purchase of property, real or personal, and taking conveyance therefor. If the employer should be slothful in payment, it would prevent his employé, however straitened for the want of it,

using his overdue wages by transfer as other people do their *choses in action.* It would have, also, the further effect of preventing other citizens investing their funds in the debts of such corporation, if they should so desire. Such cannot have been its intention, and ought not to be held its legitimate result. The last count in the declaration illustrates this aspect of the question exactly. In that count the appellants ask to recover of the appellees, the wages of Wm. M. Johnson, amounting to sixty dollars, already earned, and admitted to be due him, which had, by written assignment, been transferred to them for value received, and for which, it may be, they had paid dollar for dollar in money by way of accommodation. That such a claim, although only an open account, is a *chose in action,* and the subject of assignment within the meaning of the Act of 1829, now the 9th Article of the Code, has never been doubted since the decision of *Crawford vs. Brooke,* 4 *Gill,* 222. If that assignment is not good, and these appellants cannot recover on it, the amount it represents, it must be because this Act of 1880, ch. 273, has *quoad* this assignor, and such *chose in action,* and all other assignors and *choses in action* of exactly the same character, repealed the provisions of the Code on the subject of assignments. If it does work such repeal, it does so by necessary implication; for there is no direct assertion thereof in the Act. That such was not the purpose of the Act, and could not be held to be one of its results, even if such provision were constitutional, we think very evident, when it is considered with reference to what it denounces, and what kind of law it is. It is a penal statute, and must be construed strictly. What it denounces as *void* is the contract of the corporation to pay its hands in any other way than in money. What it expressly prohibits, is the making of such contract with the employé in an other way than as the law directs; and the payment in any other way than it by its

Shaffer & Munn *vs.* Union Mining Co.

terms allows. The making of such contract, or the payment of wages in any other way than the law directs, is made an indictable offence, which is heavily punishable by fine. It is the corporation which is punished—not the employé. The latter is treated as the party injured by the corporation dealing with him in the inhibited way; and he is allowed to recover his wages without abatement for the dealings of the corporation in violation of the Act; the corporation being denied set-off on suit for the wages, except in specified particulars. The wages due this assignor were due in money. There is no pretence that the appellee had made any contract with him for payment otherwise; nor does it appear he was not paid the amount of the assigned bill in money by the assignees. The only ground on which payment of this claim is resisted is, that in consequence of the provisions of this statute, Johnson has no right to assign his claim to anybody, and the company can lawfully pay nobody but him in person. Such is certainly not a necessary or reasonable implication from the statute. Clearly, this being a penal statute, that will not be an offence under. it, which is not expressly within its prohibitions, or necessarily within its spirit. Would the payment of this sum in money to Shaffer and Munn when presented without suit have subjected the appellee to indictment and justified conviction under this statute ? Every element or ingredient of the offence denounced by this statute is wanting to justify prosecution. It is too plain for argument, that in that instance there is not the shadow of ground for conviction. No contract in violation of the statute exists. No payment has been made otherwise than in money, nor will be if the judgment goes and is legally enforced; and there is no reason to suspect collusion. We cannot have one rule for construing this statute in its criminal aspect, and another in administering it civilly. The defendants were certainly liable to pay this assignment. The assignee is

directed to receipt *for the money, the sum* assigned, and that receipt would protect the appellee against the assignor to that extent on a suit by employé for his wages. It would be payment *pro tanto,* not set-off. To this extent at least, there was error in the ruling of the Court below.

Applying the same tests to the other counts in the *narr.* which set out the two orders, can recovery be refused? These orders are for the payment of wages already due, and for wages yet to be earned, and to become due; and they also provide that the payee shall receipt in the name of the drawer, and such receipt shall be good and conclusive against the drawer. The fact that wages to be earned, and not then earned, were included in the order, (if there was no collusion to evade the law,) could not effect the recovery for so much wages as might be due when the order was given, if the unearned wages were not assignable.

The learned Judge who decided this case below, says in his opinion that "the current of authority seems to establish the proposition that such assignments are valid, provided the assignor. at the time of the assignment is under a contract of employment, but that if he is not, then the assignment is invalid."

We express no opinion upon that question, because the admission of facts does not meet the requirements of those cases wherein such assignments have been upheld. It does not appear from the evidence that there was such subsisting binding contract for service to be rendered, and payment to be made for it, which binds the employé to render service, and the employer to accept the service and retain in his employ, as has been held, (in those cases affirming such assignability,) to be necessary to support it. In this case, the admission goes no further than to say that these employés had been in the service of the Mining Campany for some time previous to the date of order, and at its date expected to continue therein, and

actually did so continue, until suit brought; but it nowhere appears that the Mining Company was under a contract to employ for more than a day. *Non constat,* but he might be discharged any moment. It remains to inquire whether these orders were fraudulent; that is in evasion or fraud of the law; and were the acceptances by the appellee void because in violation of the law. According to the rule and reasons we have expressed in considering the assignment set out in the third count of the appellants' *narr.* the order and acceptances were not void, and payment of them to the extent that wages had been earned when the orders were given must be enforced, unless the facts would warrant a conviction of the appellee for making such acceptance and payment according to it. If it appeared in the proof that the appellee had contracted with these hands, that they should take up their wages or any part of them in the store of Shaffer & Munn, by purchasing goods of that firm, so that thereby the hands could not get full payment in money, and so that the Mining Company could thereby get the opportunity of settling business with Shaffer & Munn without the payment of "ready money," we should have little difficulty in saying such a contract was within the prohibition of the statute, and that the appellants must be held in complicity with an effort to evade the statute, and aiding therein, and would be denied the right to recover. It does not seem to us, however, that such a state of things does exist. It does not positively appear to be the case, and we cannot reasonably infer any such arrangement. There may be some suspicion of the transaction, that it was gotten up in evasion of the statute, but there is not proof enough to bring it either within its letter or its spirit. The fact that the store-house in which the appellants conduct their business belongs to the appellee, and is rented of it by the appellants, is certainly not enough to prevent their dealing with their landlord's employés,

selling them necessaries or other property, and accepting from them in payment, orders and assignments on their employers, as we have said other people may legitimately do. From the bare relation of landlord and tenant, we may not infer a combination to transgress or evade the law, and that fact standing alone cannot render the acceptances void. The acceptances were contracts to pay to Shaffer & Munn the sums they represented, and their payment by appellee will be *payment* of so much money to the assigning employé, unless the transaction was an intended violation of the statute, and evasion would be held to be so. The proof discloses nothing from which we could find that the hands did not exercise an uninfluenced discretion in dealing with the appellants, nor that the appellee would be setting off as against the employé anything but payments in money. The mention in the orders of bills to be paid by the appellee, was only a mode of stating the amounts to be paid on the order, and for which the appellants were authorized in the name of the assignor to receipt. The bills paid would not be "set-off," but the receipts would be *payment* of so much money as appellants acknowledged to have received, and would be so received in evidence on a suit for the wages by the employé, under a plea of payment, and could not be excluded under the facts of this case, without others in aid of them. Under these facts the appellee could not be convicted, and must be held to his undertaking by the acceptance of the orders. If the employé had sued for his wages, and the appellee had pleaded payment, and to that the plaintiff had replied that by the contract of service he was bound to take up the amount of his wages or any part thereof in the store of these appellants, and to that a demurrer had been interposed, a very different question would be presented, and we might find more difficulty in its decision. Presented, as this question is, we think the Circuit Court erred in deciding that this

Act of 1880 so far repealed the ninth Article of the Code touching assignments, as prevent the employés of such companies as are described in the statute from assigning their wages, no matter how *bona fide* the assignment might be, and for that reason the judgment will be reversed and a new trial will be ordered.

*Judgment reversed with costs,*
*and new trial ordered.*

(Decided 9th December, 1880.)

