STATE *vs.* BROWN & SHARPE MANUFACTURING COMPANY.

The B. manufacturing company was chartered by an act of incorporation which by its terms was subject to the provisions of Revised Statutes R. I. cap. 125. One of these was, "All acts of incorporation hereafter granted may be amended or repealed at the will of the General Assembly." Subsequently a general act was passed requiring manufacturing corporations to pay their employés weekly.

*Held*, that the last named act must be construed as an amendment of the B. company's charter, that the act was not obnoxious to constitutional objections, and that the B. company was subject to the provisions of the act.

In criminal proceedings under a public statute a District Court adjudged the defendant probably guilty, and constitutional questions having been raised as to the validity of the statute certified the constitutional questions to this court for decision under Pub. Stat. R. I. cap. 220, §§ 1-9.

*Held*, that the action of the District Court was proper and that the constitutional questions were properly before this court.

CONSTITUTIONAL QUESTIONS certified to the Supreme Court under Pub. Stat. R. I. cap. 220, §§ 1–9.

*October* 3, 1892. ROGERS, J.   In this case constitutional questions were certified to the Supreme Court under Pub. Stat. R. I. cap. 220, §§ 1–9, by the District Court of the Sixth Judicial District.   In the District Court complaint was brought charging the defendant with violating the provisions of Pub. Laws R. I. cap. 918, of March 4, 1891, known as the "Weekly Payment Law," and upon the examination thereon the defendant moved that the complaint be quashed and dismissed because said chapter was unconstitutional and void, being in conflict with the constitution of the United States, especially with art. 5 and art. 14, section 1 of the amendments thereof, and also with the constitution of Rhode Island, and particularly with art. 1, sections 2, 10, 16, thereof.

The District Court overruled the motion, and having adjudged the defendant probably guilty has certified the questions involved in it to this court for decision.

Chapter 918 of the Public Laws, entitled "An Act Providing for Weekly Payments to Employés of Corporations," was passed March 4, 1891, and is as follows:

"SECTION 1.   Every corporation, other than religious, literary or charitable corporations, and every incorporated city, but not including towns, shall pay weekly the employés engaged in its business the wages earned by them to within nine days of the date of such payment, unless prevented by inevitable casualty: provided, however, that if at any time of payment any employé shall be absent from his regular place of labor, he shall be entitled to said payment at any time thereafter on demand.

SECT. 2.   Any corporation violating any of the provisions of this act shall be punished by a fine of not less than one hundred dollars nor more than one thousand dollars, one-half thereof to the use of the complainant and the other half to the use of the State:   Provided, complaint for such violation is made within thirty days from the date thereof.

SECT. 3.   This act shall take effect on and after the first day of May, A. D. 1891."

The defendant corporation was chartered by an act of the General Assembly, passed at its May Session, 1868, "for the purpose of manufacturing machinery, and working in iron and other materials and for the transaction of other business connected therewith; . . . . . . . . . . with all the powers and privileges and subject to all the duties and liabilities set forth in chapters 125 and 128 of the Revised Statutes, and of any act in amendment thereof or in addition thereto."

Chapter 125 of the Revised Statutes was entitled "Provisions respecting corporations in general," and the last section thereof, which still remains in force, reads as follows: "All acts of incorporation hereafter granted, may be amended or repealed at the will of the General Assembly, unless express provision be made therein to the contrary." There was no express provision in the defendant's act of incorporation to the contrary.

Chapter 128 of the Revised Statutes was entitled, "Of Manufacturing Corporations," and contained general provisions relating to such corporations.

It is agreed that the defendant's charter is part of the record of the case, and that at the trial in the District Court the defendant offered to prove that subsequent to the passage of chapter 918 of the Public Laws it made a contract with its employés, including the complainant Curtis, to pay them otherwise than weekly and in accordance with the terms of said last mentioned chapter, and that the court excluded such evidence.

After an oral argument of this case, time was allowed for filing briefs which were to be submitted to all the members of the court, and in addition to the briefs filed by the counsel for the complainant and defendant respectively, two long and elaborate briefs favoring the constitutionality of the act have been filed by the permission of the court and by consent of the complainant's counsel; one, in the words of its title, "in the interest of the wage earners whose interests are affected by said act"; and the other by counsel signing himself, "Counsel for Intervening Labor Organizations."

The brief filed "in the interest of the wage earners" calls our "attention," in the words of the brief, "to sections 1 and 2 of chapter 220 of the Public Statutes, not for the purpose of raising a technical objection to the consideration of this cause, but in order that the point may not be subsequently urged, and that the decision may be final and conclusive," that the District Court "had no jurisdiction to try and determine the cause, and could only bind over the defendant to the grand jury, and so far as the record in this cause goes it does not appear that even that was done." In other words, the point of the suggestion is that no *judgment* within the meaning of cap. 220 had been rendered in the District Court against the party raising the constitutional question, and consequently there was nothing that could properly be certified to this court.

We do not think the point well taken. The first nine sections of cap. 220, providing for certifying constitutional questions to the Supreme Court, were intended to provide a summary method for the authoritative decision of such questions, and for such decision to substitute the Supreme Court for the inferior court. After such decision the cause was to be remanded to the inferior tribunal for its further action. It was not the *final* judgment or sentence of such tribunal that was to be rendered before the cause was certified to the Supreme Court, as is manifest from the language of sections 6 and 9. A judgment is the determination of the law as the result of proceedings instituted in a court of justice. In the case at bar, the District Court, as appears by its endorsement upon the papers, "adjudges the respondent corporation to be probably guilty," and thereupon certified the case to the Supreme Court upon the question of the constitutionality of the act under which the complaint was made. When the case is remanded to the District Court, that tribunal will either discharge the defendant or bind it over as the decision of this court upon the constitutional question may make proper. We are of the opinion that there was a sufficient judgment within the meaning of section 2 of chapter 220, in the District Court, against the defendant, to give this court

jurisdiction over the constitutional question now brought before us for decision.

The contention of the defendant is that chapter 918 of the Public Laws is unconstitutional; first, because it interferes with the liberty of the individual to contract for the sale of his labor to the best advantage as he sees fit, and also with the liberty of the corporation so to contract with the individual; and second, because it is class legislation of the worst kind in that it applies only to corporations, and only to certain classes of corporations at that.

As to so much of the defendant's contention as relates to the 5th amendment of the constitution of the United States, it is sufficient to say that it is well settled that that amendment, like all the rest of the first ten amendments, is intended solely as a limitation on the exercise of power by the government of the United States, and is not applicable to the legislation of the States. *Barron* v. *Mayor and City Council of Baltimore*, 7 Peters, 247; *State* v. *Paul*, 5 R. I. 185, 196; *The Liquors of Fitzpatrick*, 16 R. I. 60, 63; *Holmes* v. *Jennison*, 14 Peters, 540, 587; *Withers* v. *Buckley*, 20 How. U. S. 84; *Twitchell* v. *The Commonwealth*, 7 Wall. 321, 325; *Spies* v. *Illinois*, 123 U. S. 131, 136; Cooley on Constitutional Limitations, 29.

The defendant's contention that chap. 918 of the Pub. Laws infringes sect. 1 of the 14th Amendment of the Constitution of the United States, is not in our opinion well founded. That section reads as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

Chapter 918 applies only to corporations, and it applies to *all* corporations of the same class or classes. It applies only to the future, and it is in no sense retroactive. In *Missouri*

*Railway Co.* v. *Mackey*, 127 U. S. 205, 208, 209, it was contended that the law of Kansas passed in 1874, was in conflict with the 14th Amendment, in that it deprived the railway company of its property without due process of law, and denied to it the legal protection of the laws.  The Kansas act was as follows:

"Every railroad company organized or doing business in this State, shall be liable for all damages done to any employé of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employés to any person sustaining such damage."

The violation, it was contended, consisted in the alteration by the act of the rule of law exempting from liability an employer for injuries to employés caused by the negligence or incompetency of a fellow servant, which prevailed in Kansas and in several other States previous to the act of 1874, unless he had employed such negligent or incompetent servant without reasonable inquiry as to his qualifications, or had retained him after knowledge of his negligence or incompetency ; and in making the act applicable to railroad companies only.  Mr. Justice Field, in delivering the opinion of the court, said, *inter alia:*

"Assuming that this rule would apply to the case presented but for the law of Kansas of 1874, the contention of the company as we understand it, is that the law imposes upon railroad companies a liability not previously existing, in the enforcements of which their property may be taken; and thus authorizes, in such cases, the taking of property without due process of law, in violation of the 14th Amendment.  The plain answer to this contention is, that the liability imposed by the law of 1874 arises only for injuries subsequently committed ; it has no application to past injuries, and it cannot be successfully contended that the State may not prescribe the liabilities under which corporations created by its laws shall conduct their business in the future, where no limitation is placed upon its power in this respect by their charters. Legislation to this effect is found in the statute books of every State. . . . .  The objection that the law of 1874

deprives the railroad companies of the equal protection of the laws is even less tenable than the one considered. It seems to rest upon the theory that legislation which is special in its character is necessarily within the constitutional inhibition; but nothing can be further from the fact. The greater part of all legislation is special, either in the objects sought to be obtained by it, or in the extent of its application. . . . . Such legislation does not infringe upon the clause of the Fourteenth Amendment requiring equal protection of the laws, because it is special in its character; if in conflict at all with that clause, it must be on other grounds. And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions."

Further consideration of the effect of the 14th Amendment will be included in the consideration of the effect of sects. 2, 10 and 16 of the Constitution of Rhode Island upon said chap. 918, all of which it is contended said chapter violates:

Sections 2, 10, 16, of article I of the Constitution of Rhode Island, are as follows:

"SECT. 2. All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the State ought to be fairly distributed among its citizens."

"SECT. 10. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defence, and shall be at liberty to speak for himself; nor shall he be deprived of life, liberty or property, unless by the judgment of his peers, or the law of the land."

"SECT. 16. Private property shall not be taken for public uses, without just compensation."

It seems to us that the question of conflict with all these constitutional provisions may be determined by a solution of the question whether chapter 918 is a valid exercise of the power reserved to the General Assembly to amend or repeal acts of incorporation. If it is a valid exercise of such reserved power then these constitutional provisions as to so much thereof as it is claimed chapter 918 violates, would have no application, for as the defendant is an artificial and not a natural body, it accepted its charter—its creation, so to speak—on such conditions as its creator, the General Assembly, either originally or subsequently imposed.

Mr. Justice Miller, in *Greenwood* v. *Freight Co.*, 105 U. S. 13, 17, which was a Massachusetts case, after quoting section 41 of chapter 68 of the General Statutes of Massachusetts, as follows: "Every act of incorporation passed after the eleventh day of March, in the year 1831, shall be subject to amendment, alteration, or repeal, at the pleasure of the legislature," used this language:

"It would be difficult to supply language more comprehensive or expressive than this.

"Such an act may be amended; that is, it may be changed by additions to its terms or by qualifications of the same. It may be altered by the same power, and it may be repealed. What is it may be repealed? It is the act of incorporation. It is the organic law on which the corporate existence of the company depends which may be repealed, so that it shall cease to be a law; or the legislature may adopt the milder course of amending the law in matters which need amendment, or altering it when it needs substantial change. All this may be done at the pleasure of the legislature. That body need give no reason for its action in the matter. The validity of such action does not depend on the necessity for it, or on the soundness of the reasons which prompted it. This expression, 'the pleasure of the legislature,' is significant, and is not found in many of the similar statutes in other States. . . . . . .

" A short reference to the origin of this reservation of the right to repeal charters of corporations may be of service in

enabling us to decide upon its office and effect when called into operation by the legislative exercise of the power.

"As early as 1806, in the case of *Wales* v. *Stetson*, 2 Mass. 143, the Supreme Court of that State made the declaration 'that the rights legally vested in all corporations cannot be controlled or destroyed by any subsequent statute, unless a power for that purpose be reserved to the legislature in the act of incorporation.' In *Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518, decided in 1819, this court announced principles on the subject of the protection that the charters of private corporations were entitled to claim, under the clause of the Federal constitution against impairing the obligation of contracts, which, though received at the time with some dissatisfaction, have never been overruled in this court. The opinion in that case carried the protection of the constitutional provision somewhat in advance of what had been decided in *Fletcher* v. *Peck*, 6 Cranch, 87, and the preceding cases, and held that it applied not only to contracts between individuals, and to grants of property made by the State to individuals or to corporations, but that the rights and franchises conferred upon private as distinguished from public corporations by the legislative acts under which their existence was authorized, and the right to exercise the functions conferred upon them by the statute, were, when accepted by the corporators, contracts which the State could not impair.

"It became obvious at once that many acts of incorporation which had been passed as laws of a public character, partaking in no general sense of a bargain between the States and the corporations which they created, but which yet conferred private rights, were no longer subject to amendment, alteration, or repeal, except by the consent of the corporate body, and that the general control which the legislatures creating such bodies had previously supposed they had the right to exercise, no longer existed. It was, no doubt, with a view to suggest a method by which the State legislatures could retain in a large measure this important power, without violating the provisions of the Federal constitution, that

Mr. Justice Story, in his concurring opinion in the Dartmouth College case, suggested that when the legislature was enacting a charter for a corporation, a provision in the statute reserving to the legislature the right to amend or repeal it must be held to be a part of the contract itself, and the subsequent exercise of the right would be in accordance with the contract, and could not, therefore, impair its obligation. And he cites with approval the observations we have already quoted from the case of *Wales* v. *Stetson,* 2 Mass. 143.''

Rhode Island was not slow to avail itself of Judge Story's suggestion. The Dartmouth College case was decided February 2, 1819, and though the session of the General Assembly held that same month was a little too soon for the decision to bear fruit in legislation, and no charter was granted at the May session, yet at the June session of that year three acts of incorporation were passed, viz., for the Savings Bank of Newport, the Cumberland Literary Society, and the Seventh Day Baptist Church of Christ in Hopkinton, all of which contained reservations of power to the General Assembly to amend or repeal; that of the bank being in the form of a proviso at the close of the first section in these words : ''provided that said corporation shall always be considered subject to any further act or acts of the legislature relating thereto, either in amendment or repeal of this act.'' The reservation in the charter of the church was in practically the same form, while section 4 in the charter of the Literary Society was as follows : ''And be it further enacted, that this act of incorporation shall forever be subject to such acts of this General Assembly as they may enact relative thereto.'' R. I. Acts and Resolves, June, 1819, pp. 28, 39, 43.

Thereafter for twenty-five years, with so few exceptions as to be easily explicable on the ground of inadvertence, charters of every description were granted with a reservation to the legislature of the right to amend or repeal, or to alter or repeal, for sometimes one expression was used and sometimes the other, both being treated as synonymous, though after a few years succeeding 1819, the form invariably used with but slight verbal variations was as follows : ''This act of in-

corporation shall be forever subject to all future acts of the General Assembly, whether in amendment or repeal thereof, or in anywise affecting the same." The revision of the Public Laws which went into operation in September, 1844, on page 64, contained the provision still remaining in force, viz.: "All acts of incorporation, hereafter granted, may be amended or repealed at the will of the General Assembly; unless express provision be made therein to the contrary"; and thenceforth special reservation of the right to amend or repeal ceased to be inserted in the charters themselves, unless, indeed, the reservation provided for in the general statute was intended to be modified or restricted in some manner.

The reservation to the legislature of power to amend or repeal a charter contained in the charter itself, upon common law principles, is not repugnant to the grant, but is a constitutional limitation of the powers granted; and the reservation is equally valid and effectual if it exists in the constitution of the State, or in a prior general law. *Miller* v. *The State*, 15 Wall. 478, 497.

If, then, the power to amend or repeal charters reserved to the legislature is a constitutional limitation of the corporate powers granted, and if the power to amend the defendant's charter was reserved to the General Assembly, as it clearly was, then did chapter 918 operate as an amendment to the defendant's charter, and, if it did so operate, was such amendment of such a character as to constitute a proper and legal exercise of such reserved power?

The act in question made no reference in direct terms to the defendant's charter, nor to chapters 125 and 128 of the Revised Statutes, nor to the corresponding chapters in subsequent revisions of the Public Laws relating to corporations in general or to manufacturing or any other kind of corporations in particular, but its comprehensive provisions are clearly inclusive of the whole class of corporate bodies to which the defendant corporation belonged, its terms being "every corporation, other than religious, literary or charitable corporations, and every incorporated city, but not in-

cluding towns, shall pay weekly," etc.    It will be observed
that the act applies only to corporate bodies, and not to
natural persons.

In the *City of Roxbury* v. *Boston & Providence R. R.
Corp.*, 6 Cush. 424, 432, the Supreme Court of Massachu-
setts decided that an act, general in its terms, and applicable
to all railroads in the commonwealth, and in its terms ap-
plicable to the case in question, was warranted by the gen-
eral act giving to the legislature power to. amend, alter or
repeal at pleasure all acts of incorporation, and that the
legislature might thus amend or alter such charters.    In
*Bangor, Oldtown & Milford R. R. Co.* v. *Smith*, 47 Me. 34,
the Supreme Court of Maine in a similar case decided in like
manner after referring to and approving the Massachusetts
case just cited.    See also *Shaffer & Munn* v. *Union Mining
Co.*, 55 Md. 74.

The fact that a penalty is attached to the requirement con-
tained in chapter 918 does not in any way militate against
its being an amendment to the defendant's charter, and the
Maryland act referred to in *Shaffer & Munn* v. *Union Mining
Co.*, *supra*, also had a penalty attached to it.

.We are of the opinion that the intent of the General As-
sembly in enacting chapter 918 was to amend the defendant's
act of incorporation, and that said chapter operated as such
amendment, unless there was something in its character to
make it invalid as such.    The reservation of power to the leg-
islature to amend. charters, does not confer unlimited power,
and an important branch of the inquiry, therefore, is whether
the amendment intended to be made by chapter 918 is a valid
and constitutional exercise of such reserved power.    Says
Morawetz on Private Corporations, § 1096 :

"It is often a difficult matter to determine how far the
State has a right to interfere with the affairs of a corpora-
tion under a reservation of power to 'alter, amend or modify'
its charter at pleasure.    A reservation of this nature does not
give the State arbitrary control over the rights and property
belonging to a body of corporators.    This is not the meaning
of the words 'alter, amend or modify.'    A material *change*

in the enterprise of a corporation is not a mere *alteration*
or *amendment.*"

The following is language used by Mr. Justice Gray in
*Commissioners of Inland Fisheries* v. *Holyoke Water Power
Co.,* 104 Mass. 446, 451, in referring to the power reserved
to the legislature to amend charters :

"This statute, first introduced into the general legislation
of the commonwealth by stats. 1830, cap. 81, and reënacted
in the Rev. Stats. cap. 44, § 23, and in the Gen. Stats. cap.
68, § 41; has been as much a part of all charters since granted
as if inserted therein ; and was manifestly adopted with the
intention of reserving for the future a fuller parliamentary or
legislative power than would otherwise be consistent with the
effect to be allowed to the special terms of particular charters,
under the judicial construction of the constitutional prohibi-
tion against impairing the obligation of contracts.    The ex-
tent of the power reserved by such an enactment has been
the subject of some diversity of judicial opinion, and a defini-
tion of its extreme limits is not necessary to this case.    It is
sufficient now to say that it is established by adjudications
which we cannot disregard, and the principles of which we
fully approve, that it at least reserves to the legislature the
authority to make any alteration or amendment in a charter
granted subject to it, that will not defeat or substantially
impair the object of the grant, or any rights which have
vested under it, and that the legislature may deem necessary
to secure either that object or other public or private rights.

"Under such a clause, for instance, the legislature may
make the stockholders of an incorporated bank liable for the
future debts of the corporation.    *Sherman* v. *Smith,* 1 Black,
587 ; same case under name *In the Matter of Oliver Lee &
Co.'s Bank,* 21 N. Y. 9.    It may vary the measure, and thus
enlarge the proportion of the profits which a mutual life in-
surance company is required by the terms of its charter to
pay to a charitable institution.    *Massachusetts General Hos-
pital* v. *State Mutual Life Assurance Co.,* 4 Gray, 227.
Railroad corporations may be compelled, by general or special
laws, to make changes in the level, grade and surface of the

roadbed, new structures at crossings of other railroads or of highways, or station houses at particular places, in a manner, and to be enforced by forms of process different from those provided for or contemplated by the original charter, or the general laws in force when that charter was granted. *Roxbury* v. *Boston & Providence R. R. Corp.*, 6 Cush. 424; *Fitchburg R. R. Co.* v. *Grand Junction R. R. & Depot Co.*, 4 Allen, 198; *Commonwealth* v. *Eastern R. R. Co.*, 103 Mass. 254; *Albany Northern R. R. Co.* v. *Brownell*, 24 N. Y. 345; overruling *Miller* v. *New York & Erie R. R. Co.*, 21 Barb. S. C. 513."

The decisions limiting the reserved power, with rare exceptions, so far as found, apply to cases affecting vested rights of property; that is to say, the property acquired by corporations belongs to them and cannot constitutionally be taken from them; but even as to vested property the decisions are often confusing and not easily reconciled.

In *Lake Erie Iron Co.* v. *Ohio*, recently decided by the Circuit Court of Cuyahoga County, Ohio, the question of the limitation of the reserved power of the legislature to amend charters was considered in its bearing upon "An act to amend an act to secure prompt payment of wages of certain employés twice each month," passed March 21, 1887, Laws of Ohio, vol. 85, page 251, and the court held that the act was not a valid and constitutional exercise of such reserved power. The report of the decision was made stenographically and a type written copy has been furnished us. We do not altogether understand the reasoning upon which the decision was based, as gathered from the report furnished us, the accuracy of which is open to question, but so far as we do understand it, it does not command our approval.

In *Shaffer & Munn* v. *Union Mining Co.*, 55 Md. 74, the Supreme Court of Maryland decided that the Maryland act of 1880, cap. 273, entitled "An act to prohibit the payment of employés of certain corporations operating in Alleghany County otherwise than in legal tender money of the United States," was within the reserved power of the legislature to amend charters. The first section of the act provided "that

every corporation engaged in mining or manufacturing, or operating a railroad in Alleghany County and employing ten hands or more, shall pay its employés the full amount of their wages in legal tender money of the United States ; and that any contract by or on behalf of any such corporation for the payment of the whole or of any part of such wages in any other manner than herein provided, shall be and is hereby declared illegal, null and void ; and that every such employé shall be entitled to receive from any such corporation employing him, the whole, or so much of the wages earned by him, as shall not have been actually paid to him in the legal tender money of the United States, without set-off or deduction of his demand in respect of any account or claim whatever." The second section made certain exceptions as to rent of tenements, and medicine, medical attendance and fuel, and money advanced to produce those several things. The third section made payment, by consent of the employé in the notes of any bank current in the State at the time at par, as good as if made in legal tender money. The fourth section declared the making of any contract, or any payment "hereby declared illegal" should be an indictable offence in any court of competent jurisdiction, and pronounced heavy penalties. The fifth section provided that the act should go into effect from the date of its passage, April 10th, 1880.

Mr. Justice Irving in delivering the opinion of the court said :

"It being conceded that the legislature when it incorporated the Union Mining Company, reserved the right to amend or alter its charter at pleasure, there can be no doubt that the legislature could enact a law prohibiting the corporation from paying its employés otherwise than in money, and that it could forbid the corporation from making contracts with them for payment in anything but money. It was also entirely competent for the legislature, as one of the means of securing observance of the law, to withdraw from the appellees the right of set-off (in a suit against them for wages) for goods sold their employés in contravention of the act, or for any other claim prohibited by the act. The acceptance

by the corporation of a charter with the reservation of right to alter and amend, made that provision a part of the contract, which, as between the legislature and it as a private corporation, it must be understood to be. A corporation has no inherent or natural rights like a citizen. It has no rights but those which are expressly conferred upon it, or are necessarily inferrible from the powers actually granted. A private corporation is only a *quasi* individual, the pure creation of the legislative will, with just such powers as are conferred expressly or by necessary implication and none others. Whatever, therefore, may have been the mischief intended to be reached and prevented by this law, by restrictions imposed on the corporation, it was competent for the legislature by this law, which operates as an amendment of its charter, to accomplish. *State* v. *Northern Central R. R. Co.*, 44 Md. 131."

Defendant's counsel has particularly referred us to the words of Mr. Justice Swayne in *Shields* v. *Ohio*, 95 U. S. 319, 324, as laying down a rule, the proper application of which, he claims, would exclude chapter 918 of the Public Laws from the power reserved to the legislature to amend charters, and which words have been quoted in Morawetz on Corporations, § 1096, and other text books as laying down an authoritative rule. The language of Mr. Justice Swayne referred to, is as follows :

"The power of alteration and amendment is not without limit. The alterations must be reasonable ; they must be made in good faith, and be consistent with the scope and object of the act of incorporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration."

The rule thus laid down, applied as we think it ought to be, is a just and proper one, but the difficulty is not in the rule as abstractly stated, but in its application to concrete cases. *Shields* v. *Ohio* was a case wherein the legislature had altered the price per mile to be charged by a railroad company for transportation of passengers, thus interfering with the right given to the company to charge such freight

and tolls as the directors might deem reasonable, and the court held that the legislature under its reserved power could make such alteration. If the legislature, by way of illustration, should require a manufacturing corporation to build and operate a railroad not in any wise connected with its business, we should doubtless say that was not a reasonable exercise of the reserved power, and that it was not consistent with the scope and object of the act of incorporation, and Mr. Justice Swayne, in the very case of *Shields* v. *Ohio*, illustrated the application of the rule in this wise. He says:

" Two authoritative adjudications throw a strong light from opposite directions upon this subject. We cite them only for the purpose of illustration. In *Miller* v. *New York & Erie R. R. Co.*, 21 Barb. S. C. 513, the legislature, under the reserved power of alteration, required the company which had been previously incorporated to construct a highway across their road. The work was expensive, and of no benefit to the company. The act imposing the burden was held to be void. In *Mayor & Aldermen of Worcester* v. *Norwich & Worcester R. R. Co. et als.*, 109 Mass. 103, the legislature had passed an act requiring the railroad companies therein named to unite in a passenger station in the city of Worcester, the place to be fixed as provided, to extend their tracks in the city to the Union station, and, after the extension, to discontinue parts of their existing locations. The act was held to be constitutional and valid, being a reasonable exercise of the right reserved to the legislature to amend, alter or repeal the charters of those companies. See also *Commonwealth* v. *Essex Co.*, 13 Gray, 239, and *Crease* v. *Babcock*, 23 Pick. 334."

In the case at bar the amendment is of a general corporate power granted to the defendant as it is granted to all other corporations, and not directly affecting the particular or distinctive franchise of its charter, which is the right of manufacturing machinery and working in iron and other materials. This general corporate power is of course within the scope and object of the defendant's charter, for it is one of the fundamental powers of all corporations, and the General As-

sembly in the exercise of its legislative power is the branch of the government to say what general powers shall be conferred upon and continued to corporations, and the power to contract is one of the general powers.    It may affix such limitation to the power to contract as it sees fit.    The grant of corporate powers is so important and may be so far reaching that the General Assembly of Rhode Island will grant none without reserving the right to amend, for in the passage of time and the change of views brought about by human experience, powers not considered too broad at one time require limitation at another, and the very object of reserving the power to amend was to permit modification as deemed to be required for the public welfare.

The purpose of chapter 918, inferrible from the act itself, is to protect the employés of corporations from what has been termed "the greed of corporate capital."    Those employés in this State are very numerous, and, in the words of the defendant's brief, "it is a matter of common knowledge that the corporations covered by this act constitute a large majority of the employers of labor other than for domestic or farm service in this State."    In the language of Mr. Justice Field in *Paul* v. *Virginia*, 8 Wall. 168, 181:    "At the present day corporations are multiplied to an almost indefinite extent.    There is scarcely a business pursued requiring the expenditure of large capital, or the union of large numbers, that is not carried on by corporations.    It is not too much to say that the wealth and business of the country are to a great extent controlled by them."    Corporations are composed of aggregated capital, and therefore as a rule are far more rich and powerful than individuals ; then too, they must, from the nature of their being, conduct their affairs through officers and agents, and delegated power is liable to be used more harshly than power not delegated.    It is a matter of common knowledge that while corporations, owing to this very corporate power of aggregating capital, are the richest and strongest bodies as a rule, in the State, their employés are often the weakest and least able to protect themselves, frequently being dependent upon their current wages

for their daily bread.    If they get credit they must pay for it, as others do, and in proportion to their inability to pay cash and the risk in trusting them, they have to pay for the time indulgence they obtain.    To save labor and expense many corporate pay rolls were made up but twelve or thirteen times a year, and sometimes, when corporate means were cramped, even less often, whereby employés were obliged to wait for their pay, and the longer they had to wait the less it was worth to them.

Employés, whether of corporations or individuals, are favored beyond any other class by the laws of this State, as shown by our insolvent laws, which provide that "no assignment hereafter made for the benefit of creditors shall give to any one creditor any preference over the claims of any other creditor, except the creditor be the United States or the State of Rhode Island, or for the wages of labor performed within six months previous to such assignment, not exceeding one hundred dollars to any one person, which claims shall be paid in full if sufficient, whether such preference be expressed or not; provided, however, that the expenses of executing the assignment shall first be paid out of the estate."    Pub. Stat. R. I. cap. 237, § 14; Pub. Laws R. I. cap. 497, of April 23, 1885.    A corporation derives its powers solely from the legislature, and that corporate powers and privileges are valuable is demonstrated by the vast increase in corporations each succeeding decade, not the least valuable of such corporate privileges being a limitation to the liability of stockholders for the debts of the corporation; and one effect of cap. 918 would be to prevent, to a considerable extent, failing corporations, forced to make an assignment for the benefit of their creditors, from owing to their employés a larger sum than would be preferred by law.

If it be said that, however rich and powerful corporations may be, and however poor and weak their employés, the latter are not obliged to work for the former, and, if they choose to work for corporations, they can, but for chapter 918, make such agreements as they see fit and thus protect themselves, then it may be replied that poverty and

weakness can wage but an unequal contest with corporate wealth and power, and that the legislature in granting valuable corporate powers and privileges might be willing to do it, or, if already granted, to continue them if it has retained the power to amend such original grant, only on condition of minimizing corporate power to drive hard bargains with their employes, who, too often in the sharp and bitter competition for work, have to submit to such terms and conditions as their employers see fit to prescribe.    But for the power granted . by the legislature, corporations could not make any contract, and we see no reason why the legislature under its reserved power to amend charters cannot limit the power to contract in the future just as they might have fixed it in the original charter, if any reasonable purpose is to be subserved thereby.

The limitation of liability of stockholders for the debts of a corporation, the necessity of corporations to delegate the exercise of power to officers and agents, the fact that corporate powers are privileges granted by the legislature on such conditions as the granting power sees fit to impose, and which corporate privileges, by affording facilities to aggregate capital, conduce to the concentration and increase of power, are reasons why the General Assembly might regard corporate bodies as proper subjects for legislation not permissible, perhaps, in relation to natural persons.    We think chapter 918 is within the reserved power of the General Assembly to enact, so far as reasonableness is concerned, if they deem it expedient.    In the words of Chief Justice Waite in *Munn* v. *Illinois*, 94 U. S. 113, 132 : "For us the question is one of power, not of expediency. . . . . . Of the propriety of legislative interference within the scope of legislative power, the legislature is the exclusive judge."

In applying Mr. Justice Swayne's rule still further, we fail to discover anything on the face of the act under consideration, or inferrible from its operation, that leads us to question the good faith of the General Assembly in passing it.    Said Mr. Justice Field in *Soon Hing* v. *Crowley*, 113 U. S. 703, 710 : "The rule is general with reference to the

enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferrible from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments."

Question has been made at the bar whether chapter 918 was to be deemed an exercise of the police power. While, if it were a police power, there can be no question of the propriety of its exercise, yet the converse is not true, viz.: that if it is not a police power it would necessarily be unreasonable and an invalid exercise of the power reserved to the General Assembly to amend charters. As this act applies only to corporations and is therefore intended to remedy evils presumably attaching to them only, we do not in our view of the case consider it necessary to consider that point further.

The argument at the bar that the power to contract, granted in the charter, was such property of the defendant that modifying or limiting it by the General Assembly was taking away defendant's property without compensation, does not seem to us to be well founded. The property of a corporation that cannot be taken away by the General Assembly through the exercise of its reserved power, is such property as upon the dissolution of the corporation would belong to its creditors and stockholders, and not a privilege it derived from the creating power, and which it was agreed upon accepting the charter, might be amended *at will* by the General Assembly.

It has been argued that chapter 918 would prevent contracts for payment by the piece or job. We do not so understand the act. If employés are to be paid by a time standard then they must be paid weekly, but if they are to be paid by the piece, then wages are not "earned" until the piece is done, and the wages to be paid weekly are the wages "earned" to within nine days of the date of payment.

It has been urged that chapter 918 is unconstitutional because it interferes with the rights of employés to make such contracts with a corporation as they see fit. No inhibition is placed upon employés to make such contracts as they choose, with any person or body, natural or artificial, that is author-.ized to contract with them. But corporations are artificial bodies and possess only such powers as are granted to them, and natural persons dealing with them have no right to demand that greater power should be granted to corporations in order that they may make other contracts with such corporations than the corporations are authorized to enter into. Chapter 918 was clearly passed in the interest of the employé and it is not easy to see how it would operate to his disadvantage. If he did any labor under a time contract which the corporation was not authorized to make, he would be paid not under the contract, but under a *quantum meruit* every week.

Stress has been laid upon the fact that chapter 918 applies only to certain kinds of corporations, as it does not include religious, literary or charitable corporations. The excepted corporations rarely, if ever, have capital stock, rarely, if ever, are prosecuted merely for pecuniary gain, and being for the spiritual, mental or physical elevation of mankind, would not come within the ends to be subserved by the act as to other corporations. The different aspect from other corporations with which they are regarded by the State is clearly indicated by the constitutional provision requiring petitions for acts of incorporation in general, presented to the General Assembly, to be continued until another election of members shall have taken place, and public notice thereof to be given, whereas petitions for acts of incorporation for religious, literary or charitable purposes may be acted on at any time without such continuance and notice. Constitution of Rhode Island, art. 4, section 17. We fail to see any force in the objection that an invidious distinction has been made in favor of such corporations.

The inclusion of cities in, and the exclusion of towns from the operation of chapter 918 require no consideration from us

in this case, for as public corporations they are governed by rules of law not applicable to the defendant as a private corporation, and the only inquiry before us now is whether said chapter is constitutional so far as it relates to the defendant.

In our opinion chapter 918 of the Public Laws is not in violation of any of the constitutional provisions of the United States, or of this State, that have been particularly called to our attention, nor do we think of any other provision with which it conflicts, and therefore the questions presented by the certificate must be answered adversely to the defendant and the case sent back to the District Court for further proceedings in pursuance of this decision.

*Order accordingly.*

*Nicholas Van Slyck & Cyrus M. Van Slyck*, for the State.
*William G. Roelker*, for defendant.
*Charles F. Baldwin & Edward L. Gannon*, for the "interest of the wage earners."
*George J. West*, for "intervening labor organizations."