341 A.2d 725.

STATE *vs.* HOWARD N. FEIST, JR. *et al.*

JULY 25, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Roberts, C. J. This is an indictment in six counts, charging the defendants, Howard N. Feist, Jr. (Feist) and Shepard Company (Shepard), with violating G. L. 1956 (1968 Reenactment) §28-14-2[1] in that they failed to pay wages to six employees of Shepard within the time prescribed for such payments in the statute. Thereafter, defendant Feist, charging that the statute violated art. I, sec. 11, of the constitution of this state,[2] moved to dismiss the indictment. He argued that the statute pursuant to which the indictment was returned provides for imprisonment[3] to enforce the collection of a debt in violation of said art. I, sec. 11. The trial justice granted the motion,

---

[1]General Laws 1956 (1968 Reenactment) §28-14-2 reads, in part, as follows: "Except as provided in §§28-14-4 and 28-14-5, every employer, other than religious, literary or charitable corporations, shall pay weekly to the employees engaged in his business (except employees whose compensation is fixed at a yearly, monthly or semimonthly rate) the wages earned by them to within nine (9) days of the date of such payment, unless prevented by inevitable casualty * * *."

[2]"The person of a debtor, when there is not strong presumption of fraud, ought not to be continued in prison, after he shall have delivered up his property for the benefit of his creditors, in such manner as shall be prescribed by law." Rhode Island constitution, art. I, sec. 11.

[3]General Laws 1956 (1968 Reenactment) §28-14-17 provides, in pertinent part: "Any employer who shall violate, or fail to comply with any of the provisions of this chapter shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine * * * or by imprisonment for not less than ten (10) nor more than ninety (90) days, or by both * * *."

and the state is now prosecuting an appeal from that decision in this court.

In prosecuting this appeal, the state contends that the trial justice erred in concluding that the pertinent provisions of the statute violate art. I, sec. 11, of the constitution. It argues that the legislation is a penal statute intended to impose criminal sanctions on the conduct prohibited therein, stressing that nothing in the statute can be construed reasonably to provide for the enforcement of the payment of a debt. On the other hand, defendant argues that wages earned and unpaid an employee constitute a debt, and, therefore, the provisions of G. L. 1956 (1968 Reenactment) §24-14-17 providing for the imprisonment of an employer convicted of failure to pay according to the terms of §28-14-2 is imprisonment for debt in violation of art. I, sec. 11, of the constitution.

In view of the thrust of these opposing arguments, we have concluded that we are required here to answer but a single narrow question. That question is: what was the purpose that the Legislature intended to accomplish in enacting the pertinent provision of the statute requiring the payment of wages on a weekly basis? In short, we are called upon to decide whether the statute is facially unconstitutional in that its provision for imprisonment violates art. I, sec. 11.

In the first place, it would be helpful to an understanding of the issue raised here to clarify the thrust of art. I, sec. 11, of the constitution of this state. Our constitution does not prohibit imprisonment for debt. What it prohibits is the continuance of such imprisonment for debt "* * * after he shall have delivered up his property for the benefit of his creditors * * *." Section 11 of art. I also makes it clear that the benefit of that provision may be defeated and the imprisonment of the debtor continued where there is a strong presumption of fraud.

At the outset, we reiterate our acceptance of the proposition that the Legislature of this state, subject to relevant constitutional limitations, is vested with the authority to make criminal the nonpayment of wages as provided in the instant statute. *See Hazard* v. *Howard,* 110 R. I. 107, 111, 290 A.2d 603, 606 (1972). In *State* v. *Jorjorian,* 82 R. I. 334, 107 A.2d 468 (1954), we noted that the Legislature has an inherent power to prohibit and provide punishment for any act, provided that in the exercise of that power it does not violate any provision of the state or federal constitutions. It is equally well settled that courts shall not look further into the propriety of enacting a penal statute than to ascertain that the Legislature did not exceed its authority in so doing. *Creditors' Service Corp.* v. *Cummings,* 57 R. I. 291, 190 A. 2 (1937).

We are of the opinion that with respect to the instant statute the history of the legislation requiring the weekly payment of wages to employees by employers sheds considerable light upon the intent of the Legislature in enacting the statute in its present form. Legislation providing for the weekly payment of wages to employees of corporations was first enacted in this state in P. L. 1891, ch. 918. Section 1 of that act required that corporations, excepting charitable, religious, or literary corporations, pay weekly their employees the wages earned by them to within nine days of the date of such payment unless prevented by inevitable casualty. Section 2 thereof provided that any corporation violating the provisions of the act would be punished by a fine of not less than $100 nor more than $1,000 "* * * one-half thereof to the use of the complainant and the other half to the use of the State * * *."

It must be conceded that the Legislature, in providing that one half of such fine as might be imposed go to the use of the complainant, intended to provide a quasi-criminal procedure which, in addition to punishing cor-

porations with a fine, would provide the employee with some leverage that would enable him to recover, in part at least, the unpaid wages due him. In other words, we are of the opinion that the statute in its original form did provide a method for enforcing the payment of the debt, even if indirect. However, it being impossible to imprison a corporation, no provision for imprisonment was made. Consequently, a question as to a violation of art. I, sec. 11, of the constitution did not arise.

Shortly after the enactment of ch. 918 in 1891 its purpose was discussed at length in *State* v. *Brown & Sharpe Mfg. Co.,* 18 R. I. 16, 25 A. 246 (1892). Disclosing the purpose for which the statute was enacted, the court, speaking through Mr. Justice Rogers, at 33, 25 A. at 252, said that the purpose of the act "* * * is to protect the employes of corporations from what has been termed 'the greed of corporate capital.'" Mr. Justice Rogers further said at 34, 25 A. at 252, referring to the economic insecurity of employees of corporations: "If they get credit they must pay for it, as others do, and in proportion to their inability to pay cash and the risk in trusting them, they have to pay for the time indulgence they obtain. To save labor and expense many corporate pay rolls were made up but twelve or thirteen times a year, and sometimes, when corporate means were cramped, even less often, whereby employes were obliged to wait for their pay, and the longer they had to wait the less it was worth to them." It appears to be clear, then, that the Legislature, in enacting the 1891 statute, intended to provide an employee with a quasi-criminal process whereby he could in many instances recover some of the amount due him.

The law requiring the weekly payment of wages remained substantially the same until 1941, being designated at that time as G. L. 1938, ch. 116, §§93 and 94. Then the Legislature enacted P. L. 1941, ch. 1069, and in

so doing expressly repealed §§93 and 94 of ch. 116 of G. L. 1938. In taking such action, the Legislature clearly disclosed an intention to do away with the prior approach to the problem and to substitute therefor an entirely new one.

During the years of depression and economic disaster that preceded 1941, the Legislature became obviously aware of the impact upon society at large of the "public welfare crimes," so called. It became generally recognized that such crimes not only brought economic distress to individuals within a community but resulted also in accentuating economic and social hardship and deprivation within the entire community. So enlightened, the Legislature obviously concluded that the common weal would be better served by applying criminal sanctions to such public welfare crimes than by affording the individual wage earner some indirect method of enforcing the payment of his wages.

Public Laws 1941, ch. 1069, sec. 2, extended its coverage from corporations to all employers, excepting charitable, literary, and religious corporations, and included within its coverage principals and agents of corporate entities. The provisions of sec. 2 requiring weekly payments remained substantially as they had been in the prior act. However, in sec. 8 of ch. 1069 it was provided that any employer who violated the terms of the statute would be "* * * guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than $50.00 nor more than $100.00 for each separate offense, or by imprisonment for not less than 10 nor more than 90 days, or by both such fine and imprisonment." The statute as enacted in 1941 remains in effect today as §24-14-17 of G. L. 1956.

In our opinion, the changes made in enacting the 1941 statute are highly significant of a legislative intent to abandon the compensatory philosophy of the prior statute

and to substitute therefor a criminal procedure designed to promote the social and economic welfare of the community at large. Clearly indicative of this intent is the extension of the coverage of the act to all employers, the abandonment of the apportionment of the fines imposed between the state and the complainant, an express declaration that such an offense shall constitute a misdemeanor, and the inclusion of an effective deterrent to such conduct in the form of imprisonment. This court finds that the creation of such criminal sanction is reasonably related to the achievement of the recognized public benefit resulting from prompt payment of wages. The reasonable accomplishment of this end is within the power of the Legislature. Consequently, this court concludes that, in enacting the criminal penalty in question for failure to pay wages, the Legislature did not exceed its constitutional authority.

We hold, then, that it was error to grant the motion of the defendant to dismiss the indictment on the ground that the pertinent provisions of the statute violate art. I, sec. 11, of the constitution of this state.

The appeal of the state is sustained, the decision appealed from is reversed, and the case is remanded to the Superior Court for further proceedings.

Motion to reargue denied.

*Julius C. Michaelson*, Attorney General, *William G. Brody*, Special Asst. Attorney General, for plaintiff.

*James R. McGowan; Salter, McGowan, Arcaro & Swartz,* for defendants.